Parsons, C. J.
The action is assumpsit by the plaintiff as holder of a bill of exchange, drawn by himself in Manchester, in England, on the defendants, in sterling money, and made payable to his own *131 order in six months, against the defendants as acceptors, who, on the date of the bill, accepted to pay it in London. A verdict was found for the plaintiff on the trial, subject to the opinion of the Court upon the case reserved.
*On examining the case, there appears to be but one [ * 160 J point litigated by the parties, they differing only as to the rule by which the damages should be assessed.
The defendants insist that the bill is not to be considered as a foreign bill of exchange, but as a mere promise made in England, to pay money there in six months; and according to them, the rule for assessing damages is, to reduce the sterling money to the currency of the United States, reckoning the exchange at par, and to add English interest from the time the bill was dishonored to the time of the verdict.
On the other side, the plaintiff has argued, that the contract declared on is to be considered as a foreign bill of exchange; and that in assessing the damages, he is entitled to have the sterling money and the charges of protest reduced to our currency, reckon ing the exchange at par, with American interest from the time the bill was dishonored to the time of the verdict; also ten per cent, on the face of the bill, according to the ancient usage in this state; and, further, the value of re-exchange, which, when the bill was refused payment, was five and a quarter per cent., but at the time of the verdict was ten per cent.
The first question is, whether the instrument declared on is, or is not, to be considered as a foreign bill of exchange. That the instrument is a bill of exchange, is not disputed; but the defendants contend that it is an inland bill, because it was drawn in England, and accepted to be there paid. It appears that the bill was drawn on a Boston house, one of which was then at Manchester, in England, but that his domicile was in Boston ; and that the acceptance by him in the name of the firm was made at Manchester, by which the firm undertook to pay the bill in London in six months. From this statement, it is manifest that the remedy contemplated by the parties, in the event of the bill being dishonored, must be sought in this state, where the acceptors lived. From this view of the case, the instrument must be considered as a foreign bill, having *the same effect as if the payee had sent it to [* 161 ] Boston, and it had been accepted, payable in London, by the house here, in which case the money must be remitted to London, to meet the bill returned to the drawer after acceptance.
The next question concerns the rule, by which damages are assessed in actions upon foreign bills of exchange, sued here against the drawer. According to the law-merchant, uncontrolled *132 by any local usage, the holder is entitled to recover the face of the bill, and the charges of the protest, with interest from the time when the bill ought to have been paid, and also the price of re-exchange, so that he may purchase another good bill for the remittance of the money, and be indemnified for the damage arising from the delay of payment. But he cannot claim the ten per cent, of the bill, which it is here the usage to pay.
But the rule of damages, established by the law-merchant, is, in our opinion, absolutely controlled by the immemorial usage in this state. Here the usage is, to allow the holder of the bill the money for which it was drawn, reduced to our currency at par, and also the charges of protest, with American interest on those sums from the time when the bill should have been paid; and the further sum of one tenth of the money for which the bill was drawn, with interest upon it from the time payment of the dishonored bill was demanded of the drawer. But nothing has been allowed for re-exchange, whether it is below or at par. This usage is so ancient, that we cannot trace its origin; and it forms a part of the law-merchant of the commonwealth. Courts of law have always recognized it, and juries have been instructed to govern themselves by it in finding their verdicts.
This usage also governs in actions against the endorsers of foreign bills, and, by a reasonable analogy, must in this case be conformed to, although in form the defendants appear to be acceptors. For, in fact, the intention of the parties was, that the acceptors, [*162 ] as the original debtors, should * in this way be holden to remit the money, which they owed, to London, where it was to be paid.
The origin of this usage was probably founded in the convenience of avoiding all disputes about the price of re-exchange, and to induce purchasers to take their bills, by a liberal substitution of ten per cent, instead of a claim for re-exchange. And such is the course of exchange between this state and England, that the usage is generally favorable to the holders of dishonored bills, and tends to discourage the drawing of bills by persons who have no funds to meet them.
Conformably to this usage, the plaintiff in this case is entitled to rhe money mentioned in the bill, reduced to our currency at par, which, together with the expenses of protest, he shall receive with Massachusetts interest, from the time the bill was payable to the present time ; and to these items let there be added one tenth of the bill, with the like interest on it, from the time payment of the bill was demanded of the defendants, and refused, to this time.
And let the verdict be reduced by substituting, in the place of *133 the sum there found, the amount of, these several items, and on the verdict so amended, let judgment be entered for the plaintiff. (3)

 [Where a balance is due on account, payable in a foreign country, the creditor, if he sues for the same in another country, is entitled to be paid at the rate of exchange. In other words, he is entitled to have the money replaced where it was agreed to be paid. And there is no difference between bills of exchange and other contracts for the payment of money in a foreign country, as to the right to damages, to replace the money where it was payable, except that the usage of trade has fixed the rate of damages. — Grant vs. Healy, 3 Sumn. 523. — Carnagie & Al. vs. Morrison & Al., Suffolk, March T., 1841. —But see 8 Pick. 260 — Martin vs. Franklin, 4 Johns. 125. — Scofield vs. Day, 20 Johns. 102. — Ed.]