## EVERETT *vs.* COFFIN & CARTWRIGHT.

The master of a brig, having a cargo on board, obtained at *New-Orleans*, consigned to merchants at *New-York*, put into *Norfolk* in distress; sold part of the cargo to pay the expenses of the vessel; procured the residue to be transferred to another vessel; obtained a bill of lading for the delivery of the cargo to himself in New-York; and on its arrival, instead of delivering it to the original consignees, directed it to be delivered to other persons, who sold it, and received the money. In an action of *trover*, by the *owner* against the persons thus receiving the cargo, *it was held*, that they were liable to respond for its value, notwithstanding they acted without fraud, and in ignorance of the rights of the true owner.

An admission by a defendant, in an action of trover, that the property claimed had come to his possession, that he had sold it and received the money for it, is sufficient evidence of *conversion*, to maintain trover, without shewing a demand and refusal.

The *lien* of a master of a vessel on a cargo for freight and charges, may be *assigned;* and an action of trover for the cargo cannot be maintained against the assignee, unless before suit brought the lien be discharged, or a *tender*, in satisfaction, made.

A *lien* is not *waived* by the mere omission to place the refusal to deliver cr acount, on the specific ground of lien. The doctrine that a party shall not be permitted at the trial to assume a distinct ground of defence from that set up when a demand is made, applies only where he puts his right upon some distinct ground at the time of demand, and not when he merely *omits* to assert the ground relied upon at the trial.

THIS was an action of *trover*, tried at the New-York circuit, in January, 1828, before the Hon. OGDEN EDWARDS, one of the circuit judges.

The plaintiff produced a bill of lading signed by William Collins, master of the brig Dove, at New-Orleans, 27th August, 1825, acknowledging that *Bridge & Vose* had shipped on board the brig bound to New-York, 179 pigs of lead, weighing 12012 lbs. to be delivered at the port of New-York, (the danger of the seas only excepted,) unto Messrs. Tufts, Eveleth and Burrell, or to their assigns; they paying freight, &c. The plaintiff also produced a letter from Messrs. *Bridge & Vose*, dated 29th August, 1825, addressed to and received by Messrs. Tufts, Eveleth and Burrell, on or about the 6th October, 1825, informing them that Messrs. Bridge & Vose had shipped to their address per the brig Dove, 179 pigs of lead, weighing 12012 lbs. on account and risk of Mr. *Otis Everett*, of Boston. This letter was read on the trial, in pursuance of a stipulation that it might be read, *subject to all just exceptions.* The counsel for the defendants objected to its admissibility, as evidence of any fact contained in it. The judge overruled the objection, and it was read in evidence. It was then proved that in the autumn of 1825, the brig *Dove* arrived at Norfolk in distress; that a portion of the lead shipped on board of her was sold to pay part of the expenses of the brig and cargo, and the balance was transferred by one Frederick Myers, a merchant, to the schooner *Dusty Miller*, Johnson, master, bound to New-York, and a bill of lading taken, to deliver the same to Captain Collins, former master of the brig Dove. The quantity shipped on board the *Dusty Miller* was 141 pigs, which was delivered by Captain Johnson, by the order of Collins, to the defendants in this cause. Tufts, one of the original consignees, called on the defendants, who shewed him the bill of lading of the lead shipped from Norfolk by Myers, consigned to Collins, and by him endorsed, and told him that the lead had been received and sold by them, at 6½ cents per lb., and that they had received the money for it; that the contract of sale was made by Collins; that they had become responsible for the freight and average, and had advanced money to Collins. On this evidence the plaintiff rested, and the judge nonsuited him, on the ground that unless fraud was shewn in the defendants, or notice to them of the plaintiff's rights prior to the sale of

·the property, the plaintiff was not entitled to recover. The plaintiff excepted, and now moved for a new trial.

*D. D. Field*, for plaintiff. The property of the plaintiff in the lead was sufficiently proved. The defendants had no *lien ;* the right to retain for freight and average is confined to the master, and could not be transferred to another. 3 *Barn. & Ald.* 616. It did not appear that the defendants had paid the freight, or become responsible for it ; and at all events, such was not the ground of refusal relied on to deliver the lead. 3 *Camp.* 360. 2 *Johns. C.* 411. If the defendants had become responsible for the freight, it was a voluntarily act, and cannot be set up in opposition to the plaintiff's rights. No demand is necessary, where a defendant obtains the possession of property wrongfully. 1 *Johns. C.* 406. Collins was an agent for a special purpose, and could transfer no title to the defendants, or any other person. 6 *Mass. R.* 422. 5 *Esp.* 83. 1 *Camp.* 410. 2 *Phil. Ev.* 123. 6 *Johns. R.* 44. 2 *Mass. R.* 398. *Bull. N. P.* 32. 1 *Wils.* 328. 4 *Maule & Sel.* 259. 1 *Burr.* 20. 3 *Barn. & Ald.* 616. 5 *id.* 617. *Paley on Agency*, 262.

*C. Baldwin*, for defendants. The plaintiff failed in proving property. But if the evidence of property be deemed sufficient, an action would not lie until *tender* of the freight, average and charges. Collins had a *lien*, and might transfer the bill of lading in preservation of his rights, and the lien passed with such transfer. The lien of Collins was not personal ; he was not a factor, nor are the defendants factors. . The doctrine of factorship did not apply ; the defendants were mere commission merchants, acting as agents of Collins, and in utter ignorance of the rights of the plaintiff. Absolute responsibility is equivalent to actual payment. The defendants were accountable to Collins ; they did what was tantamount to insisting upon a lien ; they stated the facts as they existed. No demand of the lead was made ; there was an inquiry simply, respecting it, and all the information possessed by the defendants was given. The freight should have been tendered. 3 *Starkie's R.* 172. 1 *id.* 150. 3

*Barn. & Cres.* 342.  5 *Taunt.* 175. 2 *Bingham*, 23.  2 *T. R.* 750.  If the defendants are held responsible, there is an end to all commercial transactions.

*R. Sedgwick*, in reply.  When a party has incapacitated himself from complying, a demand need not be made.  1 *Camp.* 410.  2 *Phil. Ev.* 123.  2 *Caines' Cas. in Er.* 200. Trover lies against any one who has in his possession the goods of another by delivery, finding or otherwise ; or sells or makes use of them without his consent, or refuses to deliver them on demand.  *Buller's N. P.* 32.  *Salk.* 283. 1 *Burr.* 452.  The argument on the other side strikes at the root of this principle.  The very question, however, presented by this case, was decided in *Stephens* v. *Elwall*, 4 *Maule & Sel.* 259, where it was held that disposing or assuming to dispose of another man's goods, is the *gist* of the action of trover, and that it is no answer for the defendant, that he acted under instructions from another, who had himself no authority.  See also 1 *Wils.* 328.  As to the argument of embarrassment to commercial transactions, the point to be decided is, which of two innocent persons shall suffer, the original owner, or another.  The claim of *lien* may be considered and settled by the jury.

*By the Court*, SUTHERLAND, J.  It was proved by competent and sufficient evidence, that the plaintiff was the owner of the property in question.  The bill of lading itself, as against Collins, for whose benefit the defendants received and disposed of the property, would be *prima facie* sufficient to establish the title of the plaintiff.  The bill states that the lead was received by Bridge & Vose on account and risk of Mr. Otis Everett of Boston.  In addition to this, we have the letter of Bridge & Vose, (by whom the lead was shipped at New-Orleans, and in whose possession it of course then was,) addressed to the consignees, Tufts & Co., in which they distinctly state that the lead belonged to Mr. Everett, directing them to receive and obey his instructions respecting it.  I perceive no objection to the competency of the letter as evidence.  It is an admission of Bridge & Vose, who are to be considered the legal owners of the property previously to its

shipment at New-Orleans, that upon such shipment, if not before, it became the property of Everett, the plaintiff. The truth probably was, however, that it was purchased by Bridge & Vose, as the agents of Everett, and with his funds. Whatever the fact may have been, it is in no respect material. Neither Collins nor the defendants pretended to have had any interest in the lead before it was shipped from New-Orleans. All their rights grow out of subsequent events, and do not draw in question the original title to the property.

That the lead received and disposed of by the defendants, was a part of the lead shipped by Vose & Bridge, and which is shewn to have belonged to the plaintiff, there can be no reasonable doubt, upon the evidence in the case.

The evidence of demand and refusal was sufficient, under the circumstances of the case. One of the defendants admitted to the witness Tufts, who went to ascertain what had become of the lead, that it had come to their possession, that they had sold it and received the money for it. A more formal demand, after such an admission, was not necessary. *La Place* v. *Aupoix*, 1 *Johns. Cas.* 406, *and cases there cited.* Tufts was one of the original consignees of the lead, and had full legal authority to do all that he did; and it is not pretended that the defendants were ignorant of his character, or doubted his authority.

But I am inclined to think the defendants had a *lien* on the lead, for the freight, average and charges, which the plaintiff was bound to have paid or tendered, *before* he commenced his action. Captain Collins undoubtedly had such lien when he transferred the bill of lading to the defendants, and the lien passed with it. The lead was consigned to Captain Collins or order on its last shipment from Norfolk, probably for the purpose of enabling him to enforce his lien for the previous freight, &c. This bill of lading appears to have been assigned to the defendants, who paid or became responsible for the freight and charges. That a master of a vessel has a general lien of this description, which will pass by assignment, is not denied. It is recognized in all the cases. 2 *Johns. Cas.* 411. The subsequent fraudulent conduct of Captain Collins, in relation to these goods, cannot

NEW-YORK, divest or affect the right which the defendants had previously
May, 1831. acquired, by virtue of their lien for the freight, &c.

Everett
v.
Coffin.

But it is said that the defendants waived their lien by not putting themselves upon that ground, when the demand was made. There are a variety of cases in which it has been held that a defendant cannot defeat an action of this kind, by setting up at the trial a right to detain the goods on the ground of a special lien, when he assumed a totally distinct ground at the time of the demand made. *Boardman* v. *Sill*, 1 *Campb.* 410, *note*. *Judah* v. *Kemp and others*, 2 *Johns. Cas.* 411. 2 *Bingham*, 23. 9 *Com. L. R.* 302, *S. C.* But it will be found that wherever this doctrine has been applied, the defendant not merely omitted to assert his lien, but put his right distinctly upon some other ground. Such was the case in *Boardman* v. *Sill*, and in *Judah* v. *Kemp*; but in *While* v. *Garner*, 2 *Bing.* 23, the defendant, when the property was demanded from him, replied, "that he might as well give up every transaction of his life," as give up those goods. This was held to be no waiver of his lien ; it did not necessarily imply the asserting a right on his part to retain them on another and distinct ground. In the case at bar, the defendants to whom the application was made, stated frankly, and for aught that appears, truly, all the facts connected with their agency in relation to the property ; and among other things that they had become responsible for the freight and average, and had advanced money to Collins, as I should infer, on that account. They take no distinct ground, but state all the facts, and from the facts stated, it might as fairly be inferred that they relied upon a special lien, as on any other ground of defence. This was no waiver of their lien.

It is a good defence to an action of trover, that the defendant had a right to detain the goods under a *lien* ; unless the plaintiff shews that at the time of the demand, he offered to discharge the defendant's claim, and made a formal tender of satisfaction. The defendant in such a case has a right to detain the goods until his lien is discharged. He is not bound to relinquish his security and avail himself of his claim, by way of offset or in mitigation of damages. The plaintiff's right of action is not complete until the lien is satisfied. 2 *Ld.*

*Raym.* 752, 867. 2 *Saund.* 47, e. 1 *Salk.* 388. 2 *Show.* 161. *Cro. Eliz.* 271. *Bull. N. P.* 45. 3 *Bulst.* 269. 3 *Campb.* 360. 2 *Phil. Ev.* 123.

NEW-YORK,<br>May, 1831.<br><br>Everett<br>v.<br>Coffin.

It is no defence in this action, under the circumstances disclosed in this case, that the defendants, in disposing of the plaintiff's property, acted without fraud, and in ignorance of the plaintiff's rights. It has been held that trover lies against a servant who disposes of goods belonging to another, to his master's use, whether he acts with or without authority from his master in so doing. *Perkins* v. *Smith*, 1 *Wils.* 328. *Stephens* v. *Elwall*, 4 *Maule & Sel.* 259. The disposing or assuming to dispose of another man's goods without his authority, is the gist of this action; and it is no answer for the defendants that they acted under instructions from another, who had himself no authority. *Lord Ellenborough, in Stephens* v. *Elwall*, 4 *Maule & Sel.* 259; 6 *East*, 538. 1 *Burr.* 20. 2 *Strange*, 813. 2 *Saund.* 47, e. 2 *Phil. Ev.* 121 *et seq. and notes referring to the American cases.* I did not understand the counsel for the defendant to contend that Collins had any right to sell and dispose of these goods. He most certainly had not, and could confer no authority upon the defendants to do so. The precise relation in which the defendants stood to Collins does not appear; but whatever they did in relation to these goods, was done under his directions and for his benefit. It may be questionable whether they acted in any other capacity than as his servants or agents in the particular transaction.

I see no objection to the plaintiff's recovery, except the special *lien* of the defendants for freight and charges; but that is fatal to this action, and the plaintiff was therefore properly nonsuited.

Motion to set aside nonsuit denied.