## Jesse Snow *vs.* Simon Goodrich.

Where the master of a vessel at a foreign port, having authority to borrow money to purchase a return cargo, drew a bill of exchange in his own name for that purpose on his owners, directing on the face of the bill, that the amount thereof should be charged to the cargo of the vessel; *it was held,* that he was personally liable, as drawer.

This was an action of *assumpsit*, against the defendant, as drawer of a bill of exchange of which the following is a copy.

"*No.* 1.   Exchange for $2000.

"*St. Pierre, Martinico, Aug.* 22, 1835.   Thirty days after sight of this first Exchange, second and third of same tenor and date unpaid, pay to *Jesse Snow,* (captain,) or order, two thousand

dollars value received, and charge the same with or without further advice, to amount of brig *Hope's* cargo.

"First. To *Samuel Winter*, Esq.     Your humble servant,
    "*Portland*.                       *Simon Goodrich*."

On the face of the bill was written by said *Winter*, "*Sept.* 11, 1835. Accepted. *Samuel Winter*." The name of *Jesse Snow* is indorsed in blank on the back of said bill. It appeared, that before the said bill became payable, the said *Winter* died insolvent, and administrators were duly appointed on his estate   The bill at maturity was presented at the counting-room of said *Winter* for payment, but he was dead; and as soon as administration was known to be taken out on said estate, *Oct.* 14, 1835, it was duly presented to the administrators for payment, which was refused.

The following facts were proved in defence.   Said *Winter*, while alive, was owner of the brig *Hope*, of which he appointed *Goodrich* master; the brig was loaded with lumber, and by written orders from *Winter* to him, *Goodrich* was directed to proceed to *Martinico*, and there sell his outward cargo, and vest the proceeds in molasses; and if he could, to borrow money, or on credit, to make up a full return cargo, and draw on *Winter* for the amount at sixty days.   *Goodrich* sold the outward cargo, as directed, which not being sufficient, he borrowed of Capt. *Snow*, master and part owner of brig *Charles*, two thousand dollars, belonging to the owners of the brig, for the payment of which he drew the bill of exchange, which is the subject of this suit.   *Goodrich* laid out the $2000 in molasses, as directed by *Winter*, to make up a return cargo, and by letter informed *Winter* of what he had done.   But to secure himself against the bill, in case it should not be accepted and paid, he shipped the molasses in his own name, and placed that purchased by the $2000 in such situation that it could be distinguished from the residue of the cargo, and after setting out on his return voyage, directed the mate to mark it.   On arriving in the harbor of *Portland*, and learning that *Winter* was dead, and his estate probably insolvent, he did mark the molasses bought with the $2000 with his own name, and refused to deliver it to the administrators of *Winter*.   He caused it to be entered at the Custom House as his own, after learning that the bill of exchange was not paid, and that the estate of *Winter* was deeply insolvent; and at

the proper time secured the payment of the duties to the *United States.* After the molasses was entered, and the payment of duties secured, and the delivery thereof to *Goodrich,* the molasses was replevied by the administrators of *Winter;* which action, at the time of the trial of this suit, was pending in the same Court.

On these facts, *Emery J.,* presiding at the trial, instructed the jury, that there was no legal defence shown to said suit; and a verdict was returned for the plaintiff for the full amount of the bill and interest, and damages, at the rate of ten *per cent.,* which ·the jury were instructed was the amount which the plaintiff had a right to recover.

The verdict was taken, subject to the opinion of the whole Court, and was to be set aside, if the plaintiff was not entitled to recover, or amended as to the amount of damages.

*Deblois,* for the defendant, contended, that under the circumstances, the plaintiff had no right to look to the defendant in the ordinary character of drawer of the bill. He was but the agent of *Winter,* and this fact must have been known to the plaintiff. He knew that the defendant was there with *Winter's* vessel, and that the money was borrowed on the brig *Hope's* cargo; for this appears on the face of the bill. He was known to the plaintiff to be a mere agent of *Winter,* and in such case the principal is held, but the agent is not. *Winter* authorized the drawing, and had the benefit of the proceeds, and is held for that cause. Enough appears to show, that the defendant intended to bind the principal, and not himself, and that this was known to the plaintiff at the time. *Bayley on Bills, ed. of P. & S.* 73; *Mann* v. *Chandler,* 9 *Mass. R.* 335; *Mott* v. *Hicks,* 1 *Cowen,* 513; *Van Keimsdyke* v. *Kane,* 1 *Gall.* 630; *Wallace* v. *Agry,* 4 *Mason,* 336; *Rosseter* v. *Rosseter,* 8 *Wend.* 494; *Milward* v. *Hallett,* 2 *Caines,* 77; *Long* v. *Colburn,* 11 *Mass. R.* 97; *Scott* v. *McLellan,* 2 *Greenl.* 199; *Descadillas,* v. *Harris,* 8 *Greenl.* 298; and *Miles* v. *O. Hara,* 1 *Serg. & R.* 32.

*Kinsman,* for the plaintiff, argued that no agency of the defendant for *Winter* appeared on the face of the bill, or was found in the case. Although he intended, that *Winter* should be bound, he intended and expected to be himself bound also. The bill was

drawn on *Winter*, and if the defendant was merely his agent, the drawer as well as the acceptor was the same individual. But the after conduct of the plaintiff shows, that he considered himself bound, for he marked and retained, as his own, enough of the cargo, and the portion purchased with this money, to indemnify him. *Thomas* v. *Bishop*, 2 *Strange*, 955 ; *Hill* v. *Varrell*, 3 *Greenl.* 233 ; *Lefevre* v. *Lloyd*, 5 *Taunt.* 749 ; *Leadbitter* v. *Farrow*, 5 *M. & Selw.* 345 ; *Mayhew* v. *Prince*, 11 *Mass. R.* 54 ; and *Scott* v. *Wilkinson*, and *Descadillas* v. *Harris*, cited on the other side.

The case was continued, for advisement, and the opinion of the Court afterwards drawn up by

EMERY J.—On the facts reported, is there a legal defence against the bill of exchange declared on ? And is the verdict for too large a sum, provided there be no such defence ?

Nothing appears on the face of the bill that would necessarily exempt the drawer from responsibility. He has not drawn it as agent for the owners of the brig *Hope's* cargo. Nor does it appear, that he borrowed the money, or that the plaintiff loaned it, on the credit of those owners. Nor does it appear, that the orders or letters of instruction from *Winter* to the defendant, were exhibited to the plaintiff to induce the accommodation, which he granted. If it were so, there is quite a variance from the orders.

In those orders it is written, " If more funds are wanted and you can procure a full cargo, you will draw on me for the amount at sixty or ninety days, and your drafts shall meet due honor." This bill is made payable in 30 days after sight.

All the subsequent acts of the defendant show his intention to hold the proceeds purchased with the money loaned, as an indemnity for the liability he had assumed in the character of drawer against the hazard of failure of *Winter*, to accept and pay.

Before the bill became payable, *Winter*, the drawee, had died insolvent, and his administrators declined paying. If the master in cases of necessity may hypothecate the cargo for supplies, or advances in a foreign port, and no doubt can be entertained on the subject of that right, " It seems fairly to result, that if he pledge his own individual credit to obtain a cargo, that he should have a right to retain it, as security for his liability. 3 *Mason*, 255, *The Ship Packet*,

*Barker, Master;* 11 *Mass. R.* 72, *Lewis* v. *Hancock et al.;* 3 *Cranch,* 140, *Hodgson* v. *Butts;* 6 *Wend.* 603, *Everett* v. *Coffin et al.*

The master is as much responsible on his personal contract, as the owner would be, unless the credit be given exclusively to the owner. 3 *Kent's Com.* 161, and cases there cited.

If the agent, as the master is for the owners, sign his own name only to the bill, as drawer, he will become personally liable on the bill. 5 *M. & S.* 349, *Leadbitter* v. *Farrow ;* 5 *Barn. & Ald.* 34, *Eaton* v. *Bell;* 5 *Taunt.* 749, *Lefevre* v. *Lloyd.*

The next question is, whether the instructions were correct, as to interest and damages.

In 6 *Mass. R.* 157, *Grimshaw* v. *Bender et al., Parsons C. J.* delivering the opinion of the Court, says, " According to the Law Merchant, uncontrolled by any local usage, the holder, in actions upon foreign bills of exchange, sued here against the drawer, is entitled to recover the face of the bill, and the charges of protest, with interest from the time when the bill ought to have been paid, and also the price of re-exchange, so that he may purchase another good bill for the remittance of the money, and be indemnified for the damage arising from the delay of payment. But he cannot claim the ten per cent. of the bill, which it is here the usage to pay. But the rule of damages established by the Law Merchant, is in our opinion absolutely controlled by the immemorial usage in this State. Here the usage is to allow the holder of the bill the money for which it was drawn, reduced to our currency at par, and also the charges of protest, with American interest on those sums from the time when the bill should have been paid ; and the further sum of one tenth of the money for which the bill was drawn, with interest upon it from the time payment of the dishonored bill was demanded of the drawer. But nothing has been allowed for re-exchange whether it is below or at par. This usage is so ancient that we cannot trace its origin ; and it forms part of the Law Merchant of the Commonwealth. Courts of law have always recognized it ; and juries have been instructed to govern themselves by it in finding their verdicts." 9 *Mass. R.* 1, *Copp* v. *McDougall ;* recognized by *Sewall J.* at *p.* 7.

We are not aware, that this rule has been altered in this State since the separation. Perceiving no error in the instructions of the Judge to the jury, there must be

*Judgment on the verdict.*