JAMES C. AYER & another *vs.* MOSES Y. TILDEN & others.

The makers of a note, payable to themselves and indorsed in blank, delivered it to B. in New York to be discounted for them at the legal rate of interest; B. delivered the note to a broker to raise money upon it, representing that it was his own; the broker pledged the note to C. for a sum of money, which he received, with an understanding that he should sell the note and appropriate the proceeds towards the payment of that sum, and afterwards, at B.'s direction, sold it at a usurious rate of discount, and applied part of the proceeds towards the payment of C.'s loan, and handed the rest to B., who never paid any part thereof to the makers, and they never received any consideration for the note; the purchaser afterwards transferred the note to A. at its full face, and in entire ignorance of the usurious transaction. *Held,* that the note was not usurious in its inception; that the contract was therefore not within the rule of law established in the State of New York, by which a note usurious in its inception is void in the hands of an 'innocent holder; and that A. was entitled to recover the amount thereof from the makers.

In an action in this state upon a note made and payable on a day certain in another state, without any further agreement, express or implied, to pay interest, the plaintiff can recover only the legal rate of interest in this state, although less than the legal rate in the state where the note was made and payable.

ACTION OF CONTRACT upon this promissory note, made and indorsed by the defendants : " $ 670.81.   New Lebanon, 20th June 1857.   Six months after date we promise to pay to the order of ourselves six hundred and seventy dollars and eighty one cents, value received, at Bank of America, N. Y.       Tilden & Co."

The parties stated the following case, upon which the superior court in Middlesex gave judgment for the defendants, and the plaintiffs appealed.

The defendants, a firm at New Lebanon in the State of New York, made and indorsed the note, and delivered it to Frederick S. Bogue as their agent, to be discounted for them at the legal

rate of interest. Bogue took the note, with two other notes of the defendants, to R. G. Hutchins in the city of New York to be sold, and the latter delivered them to Alonzo Hutchins, a note and bill broker in New York, to be sold for Bogue. R. G. Hutchins, when he handed the notes to Alonzo, informed him that Bogue owned the notes and wanted to raise a certain sum of money upon them that day. Alonzo hypothecated or pledged the notes for that sum (which he received) to Green & Sewall, brokers in New York, with the understanding that Alonzo should negotiate and sell the notes, and appropriate the proceeds towards the payment of that sum. Bogue afterwards, on the same day, informed Alonzo that he owned the notes; that they were delivered to him by the defendants in return for merchandise sold by him to them, and requested Alonzo to sell them for the best price he could. Alonzo accordingly sold them to Shaw & Co., drug brokers in New York, at a deduction greater than the legal rate of .interest established by the statutes of that State, and Hutchins appropriated a part of the proceeds towards the payment of the money borrowed of Green & Sewall, and handed the balance to Bogue, who never paid any part of it to the defendants, and they never received any consideration for the notes. Shaw & Co. negotiated and sold the note in suit at its full face, for merchandise, to the plaintiffs, citizens of this Commonwealth, who were at that time ignorant of the purposes for which the note was made, and took it in good faith, and sent the note before its maturity to the Bank of North America in the city of New York for collection; and it was never paid, and was duly protested.

At the time of the making of this note, the legal interest of money in the State of New York was at the rate of seven dollars a year upon one hundred; and the statutes of that state provided that all bonds, notes, assurances, conveyances, and all other contracts or securities whatsoever, (except bottomry and respondentia bonds and contracts,) and all deposits of goods or other things whatsoever, whereupon or whereby there should be reserved or taken any greater sum or greater value, for the loan or forbearance of any money, goods or other things in action

than at the rate of seven dollars upon one hundred dollars for one year, and after that rate for a greater or less sum, or for a longer or shorter time, should be void.

If the court shall be of opinion that the action can be maintained, judgment is to be rendered for the plaintiffs for the principal of the note, with interest at such rate as the court shall determine ; otherwise, for the defendants.

*S. A. Brown,* for the plaintiffs.

*H. S. Briggs,* for the defendants. The note on which this action is founded was a contract made and to be performed within the State of New York, and, if usurious, is void by the statutes of that state. If void by the laws of New York, it is void everywhere. *Dunscomb* v. *Bunker,* 2 Met. 8. *Van Schaack* v. *Stafford,* 12 Pick. 565. *Stebbins* v. *Leowolf,* 3 Cush. 137. *Scribner* v. *Fisher,* 2 Gray, 43. *Dater* v. *Earl,* 3 Gray, 482. *Houghton* v. *Page,* 2 N. H. 42. *Bock* v. *Lauman,* 24 Penn. State R. 435. *Vantine* v. *Wood,* 13 Penn. State R. 270. If void in its inception, by reason of usury, the note is void in the hands of every subsequent holder, although an innocent indorsee for good consideration. 3 Kent Com. (6th ed.) 80. Byles on Bills, 251. Story on Notes, § 192. 2 Parsons on Con. 394. *Lloyd* v. *Scott,* 4 Pet. 228. *Chadbourn* v. *Watts,* 10 Mass. 121. *Bridge* v. *Hubbard,* 15 Mass. 96. *Knights* v. *Putnam,* 3 Pick. 184. *Green* v. *Elmer,* 4 Seld. 425. *Hall* v. *Wilson,* 16 Barb. 548. *Catlin* v. *Gunter,* 1 Kernan, 368. *Bossange* v. *Ross,* 29 Barb. 576. *Townsend* v. *Bush,* 1 Conn. 260. The note had no existence as a contract until it was negotiated by Alonzo Hutchins to Shaw & Co. at a usurious rate of discount, and was therefore void in its inception. *Knights* v. *Putnam, Dunscomb* v. *Bunker, Van Schaack* v. *Stafford, Hall* v. *Wilson, Catlin* v. *Gunter, Bossange* v. *Ross,* and *Bock* v. *Lanman,* above cited. *Newell* v. *Holton,* 10 Gray, 349. *Schermerhorn* v. *Talman,* 4 Kernan, 93. *Powell* v. *Waters,* 8 Cow. 669. *Aeby* v. *Rapelye,* 1 Hill, (N. Y.) 9. *Dowe* v. *Schutt,* 2 Denio, 621. *Clark* v. *Loomis,* 5 Duer, 468. 1 Story on Con. § 595. 2 Parsons on Con. 422.. The hypothecation or pledge of the note to Green & Sewall, before it was passed to Shaw & Co., did not so change the property in it, or constitute such a negotiation, as

to distinguish this case from those above cited. *Homes* v. *Crane,* 2 Pick. 607. *Bonsey* v. *Amee,* 8 Pick. 236. *Whitaker* v. *Sumner,* 20 Pick. 399. *Stearns* v. *Marsh,* 4 Denio, 227. *Wilson* v. *Little,* 2 Comst. 443. *Keutgen* v. *Parks,* 2 Sandf. 60. *Wheeler* v. *Newbould,* 16 N. Y. 392. Edwards on Bailments, 198, 250. 1 Parsons on Con. 594, & *note.*

Hoar, J. This note was a contract made and to be performed within the State of New York; and its obligation and effect must therefore be determined by the laws of that State. *Dunscomb* v. *Bunker,* 2 Met. 8.

That a contract tainted with usury in its inception is void as against the maker, even in the hands of a *bona fide* holder, for a full consideration, and without notice of the usury, is unquestionably the settled law of New York. It seems to be equally well settled that where the transaction is a sale of property, although the property sold be an obligation for the payment of money, it is not usurious. *Powell* v. *Waters,* 8 Cow. 669. *Manice* v. *New York Dry Dock,* 3 Edw. Ch. 143.

If therefore the agent of the defendants, Bogue, had really owned the note, as he pretended, the sale of it to Shaw & Co., from whom the plaintiffs derive their title, at a deduction greater than the legal rate of interest, would not have constituted usury. And if we were called upon to determine the question without regard to the decisions of the courts of New York, we should be strongly inclined to the opinion that the purchase in good faith of a note, payable to bearer, or payable to the order of the promisor and by him indorsed, from a person representing himself to be the owner for value, not the maker, at any price agreed upon between the parties, would not be usurious. To treat such a transaction as a lending of money is to give it a character not contemplated by the parties to the contract.

But it has been repeatedly held by the courts of New York, both at law and in equity, and we feel bound to follow the construction given by the tribunals of a state to its statutes, that a note made for the purpose of raising money upon it, and first passed as a valid contract to one who takes it, deducting more than the legal rate of interest is void for usury; although the

taker supposes it to be business paper belonging to the person from whom he takes it, and intends in good faith to make a purchase of the note, and not a loan of money.  *Cram* v. *Hendricks,* 7 Wend. 569.  *Munn* v. *Commission Co.* 15 Johns. 44.  *Bennet* v. *Smith,* 15 Johns. 355.  *Powell* v. *Waters,* 8 Cow. 669.  *Dowe* v. *Schutt,* 2 Denio, 621.  In *Holmes* v. *Williams,* 10 Paige, 326, the vice chancellor, after strongly stating the reasons to show that, if it were an original question, it ought not to be so held, concludes by saying, " Nevertheless, it is the settled doctrine of the courts that such a transaction is usurious."

If then the note in suit, at its first inception, when it first became a valid contract, became tainted with usury, the defence must prevail; and the plaintiffs, though innocent indorsees, cannot recover.  But if the note was negotiated, so as to become a valid and binding contract, upon a lawful consideration, then no subsequent disposition of it would make it void for usury as against the makers.

Upon examining the statement of facts to which the parties have agreed, we are of opinion that the note was valid in its inception, and became a binding contract in the hands of Green & Sewall, to whom it was hypothecated by Alonzo Hutchins, as the agent of Bogue, and that there does not appear to have been any usury in that transaction.  Bogue represented it to be his own property, and put it into the hands of Hutchins to raise money for him upon it.  It is agreed that this representation was untrue, and that Bogue was merely the defendants' agent. But the defendants had put the notes into his hands in such a form that they were equivalent to notes payable to bearer, and, having thus invested him with the apparent ownership of them, could not protect themselves against the claim of any *bona fide* holder, aside from the statute of usury, by alleging that their agent had been unfaithful.  The rule would be obviously applicable, that when one of two innocent persons must suffer by the fraud or negligence of a third, he is to bear the loss who enabled the third person to do the injury, by giving him credit and employing him as his agent.  *Lobdell* v. *Baker,* 1 Met. 203.  When

Bogue, therefore, procured the loan from Green & Sewall upon the security of the note, the defendants were bound by his act. *Collins* v. *Martin,* 1 Bos. & Pul. 648. Green & Sewall took the note for value, and in their hands it was good against the makers, at least to the extent of their advances. By the form of the transfer to them, the right of property passed with the pos session of the note. They could have maintained a suit upon it against the makers.

If then the plaintiffs succeed to the rights of Green & Sewall, the note remains good in their hands. The facts find that it was understood between Alonzo Hutchins and Green & Sewall,. at the time of the hypc thecation of the note, that it should be sold, and the proceeds be applied to repay the money which had: been advanced upon it. When Green & Sewall delivered the note to Alonzo Hutchins for the purpose of effecting the sale, we think he received it as their agent; that he sold it by their authority and for their benefit; that the money received for it was appropriated to their use, and that the purchaser took their title. Green & Sewall could not have returned the note to Bogue without losing their security upon it, which they obviously did not intend to surrender. To preserve their security, Hutchins must have been their agent for the custody and sale of the note. We do not mean to decide that the mere pledging of a note, if the pledge were redeemed, and the whole property in it revested in the maker, would give any such validity to the note as would prevent its being made void for usury, if it were afterward negotiated by or for the maker at an illegal rate of interest. But here it never was returned to the maker or his agent. It never ceased, for an instant, to be the property of Green & Sewall, till it became the property of Shaw & Co.

The defence of usury failing, the plaintiffs are entitled to recover, according to the agreement of parties, the principal of the note, with interest at such a rate as the law will allow. That rate will be six per cent. from the maturity of the note. The interest is not a sum due by the contract, for by the contract no interest was payable, and is not therefore affected by the law of the place of contract. It is given as damages for the breach of

contract, and must follow the rule in force within the jurisdiction where the judgment is recovered. *Grimshaw* v. *Bender*, 6 Mass. 157. *Eaton* v. *Mellus*, 7 Gray, 566. *Barringer* v. *King*, 5 Gray, 12. The contrary rule has been held to be applicable where there was an express or implied agreement to pay interest. *Winthrop* v. *Carleton*, 12 Mass. 4. *Von Hemert* v. *Porter*, 11 Met. 220. *Lanusse* v. *Barker*, 3 Wheat. 147.

Perhaps it would be difficult to support the decision in *Winthrop* v. *Carleton* upon any sound principle; because the court in that case held that interest could only be computed from the date of the writ, thus clearly showing that it was not considered as due by the contract, and yet adopted the rate of interest allowed at the place of the contract. But the error would seem to be in not treating money, paid at the implied request of another, as entitled to draw interest from the time of payment.

An objection to adopting the rule of the rate of interest in the jurisdiction where the action is brought as the measure of damages may be worthy of notice, that this rule would allow the creditor to wait until he could find his debtor or his property within a jurisdiction where a much higher rate of interest was allowed than at the place of the contract. But a debtor could always avoid this danger by performing his contract; and the same difficulty exists in relation to the actions of trover and replevin.

If such a case should arise, it might with more reason be argued that the damages should not be allowed to exceed those which would have been recovered in the state where the contract was made and to be performed.