### WILLIAM H. WOOD & *al. versus* WILLIAM WATSON.

If the notice to the indorser of the dishonor of a bill of exchange is such that he must know what bill is referred to, it is sufficient to charge him.

Mercantile usage in this State has established the damages on a dishonored bill of exchange on London at ten per cent.

The Court cannot vary this rule, in a monetary crisis, on account of a depreciation of the currency of the country. (DAVIS, WALTON and BARROWS, JJ., dissenting.)

ON AGREED STATEMENT.

ASSUMPSIT against the defendant, the indorser of a bill of exchange for thirty-one pounds sterling, drawn by Gomes & Filhos, at Rio Janeiro, on the Union Bank of London, 2 Princes street, Mansion House, London, payable to the order of the defendant, and indorsed by him to the plaintiffs.

The only questions raised were in relation to the form of the notices and the damages.

The following is a copy of the bill : —

"No. 3543. (Gomes & Filhos, Rio de Janeiro.) Rio de Janeiro, 2d August, 1864.

"For £31.0.0d. At sight, pay this first of Exchange, 2d and 3d not paid, to the order of David Watson, Esq., the sum of thirty-one pounds sterling.

"Value of same, "which place to account as advised by ———. To the Union Bank of London, 2 Princes street, Mansion House. "Gomes & Filhos.

(00 270)

"Indorsed. — David Watson, jr., Wm. H. Wood & Son, M. Bolles & Co., pay to the order of B. S. Cohen, Thomas Groom & Co., B. S. Cohen."

The copy in the protest of the notary was as follows : —

"Rio de Janerio, 2d August, 1864. For £31.0.0d.

"At sight, pay this first of Exchange, (2d and 3d not paid,) to the order of David Watson, Esq., the sum of thirty-one pounds sterling. Value of same, which place to account as advised by "Gomes & Tilhos.

" To the Union Bank of London, 2 Princes street, Mansion House, London.

" Indorsed. — David Watson, jr., Wm. H. Wood & Son, M. Bolley & Co., pay to the order of B. S. Cohen, Thomas Groom & Co., B. S. Cohen."

The plaintiffs sent the following notices to the defendant in the same envelope : —

" STATE OF MAINE.

" Cumberland, ss. " Portland, Nov. 18, 1864.

" To David Watson, Sir : ——— & Filhos' bill on Union Bank of London, for thirty-one pounds sterling, dated Rio de Janeiro, 2d August, 1864, payable at sight, in favor of your order, and indorsed by you, and payment having been duly demanded at said bank in London, and refused, as per protest returned, is *protested* for non-payment thereof.

" The holder requires of you payment thereof.

" Done at the request of W. H. Wood & Son, Portland.

" Yours, &c.,

" H. Ilsley, *Notary Public.*"

" Portland, Nov. 18, 1864.

" David Watson, Esq., Dear sir : — The bill on London we bought of you for £31, drawn by Gomes & *Phelos* on Union Bank, London, dated Aug. 2, 1864, Rio de Janeiro, has been returned, protested, the drawers having failed. Please come in and take it up.

" Yours truly,

" W. H. Wood & Son."

To which the defendant replied as follows : —

" Limerick, Nov. 21, 1864.

" W. H. Wood & Son, Gentlemen : — I received your note to-day. I have been sick, shall not be able to come in for some days to come. As soon as I am able, will come in and see you about the matter.

" Yours, &c.,

" David Watson."

*Howard & Cleaves*, for defendant.

The notarial certificate must contain a *copy* of the bill.

Edwards on Bills, 694; Chitty on Bills, 455; Story on Bills, 276; *Halliday* v. *McDougall,* 20 Wend., 81; *Bank of Rochester* v. *Gray,* 2 Hill, 227.

*Evans & Putnam,* for plaintiff.

APPLETON, C. J.—The protest of the notary shows a demand upon the drawee and notice to the indorsers. The defendant could not have been misled by the notice received. He must have understood to what bill reference was had. This is all the law requires.

The more important question relates to the damages to which the plaintiffs may be entitled.

Damages given on foreign bills of exchange, for non-payment, are as much part of the contract as interest. *Bank of U. S.* v. *U. S.,* 2 How., (U. S.,) 711, 737. The per centage allowed by statute on the protest of a foreign bill is a commutation for interest, damage and reëxchange. It is a statutory liquidation of damages, by which the parties are to be governed. *Lloyd* v. *McGarr,* 3 Barr, 482.

Now, mercantile usage has established the damages on bills on London, in case of dishonor, in Massachusetts, as determined in *Grimshaw* v. *Bender,* 6 Mass., 157, and, in this State, in *Snow* v. *Goodrich,* 14 Maine, 235, at ten per cent., instead of reëxchange. This usage forms a part of the law of the State. It had been of so long continuance, that, in 1809, when the judgment of the Court in *Grimshaw* v. *Bender,* was pronounced, Mr. Ch. Justice PARSONS said that its origin could not be ascertained. It must, therefore, be deemed a part of the law merchant, and as obligatory as any portion of the common law, until it shall be modified or changed by the Legislature.

Whether the rule of damages is established by statute or by a long continued usage, having the force of law, it is to be deemed a part of the contract of indorsement. The rule referred to, not having been altered by the Legislature, must be regarded as remaining in full force. It is not for the Court to change the law, whenever a monetary crisis occurs.

The rule may operate hardly in some instances, but it is for the party to obviate this by a special contract, fixing the damages, in case of dishonor, at a specified rate, or for the Legislature to establish a new rule which in their judgment shall be more equitable. It would be an act of legislation for us to intervene by changing the existing law on the subject. *Defendant defaulted.*

CUTTING, KENT, DICKERSON and DANFORTH, JJ., concurred.

DAVIS, J., (dissenting.) — We are satisfied that there is no such variance between the bill of exchange in suit, and the notarial protest, as to render the latter inadmissible in evidence, or insufficient to prove the demand at the place of payment, and notice to the indorsers. It could not have misled them. They must have known from its tenor what bill it was which had been dishonored; and the law requires nothing more. *Dennison* v. *Stewart*, 17 How. U. S., 606.

The controversy in regard to the rule of damages presents a more difficult question.

By the general law merchant, the holder of a protested foreign bill may draw at the place of payment upon the maker, or indorser, for an amount, at the current rate of exchange, sufficient to raise a sum equal to what is due upon the unpaid bill, with the expenses of protest. Or he may recover that amount by a suit against the maker, or the indorser.

But, by the usage in this State, derived from Massachusetts, and which has prevailed so long as to become a local law merchant, the holder of such a bill can recover only the amount due upon it, with ten per cent. damages, and the interest thereon. *Snow* v. *Goodrich*, 14 Maine, 235.

This rule was adopted by merchants, for their convenience, to avoid the difficulties and controversies arising from the application of the law merchant to the fluctuations in the rates of exchange. It has been in force so long that we

should not feel at liberty to disregard it merely on account of such fluctuations, however . great. To do so would be assuming the power to change the rule whenever, in our judgment, it will work injustice, and this without any proof that the usage has in fact been changed. If the law merchant was thus subject to the mere discretion of the Courts, there would no longer be any rule; and greater injustice would be liable to follow than can result from adhering to the rule during a temporary monetary crisis. We must therefore regard the rule as still subsisting, with the exception which we will state, until changed by the Legislature, or by an actual change of usage am ong merchants, by common consent, or agreement.

The exception referred to is the change of the law by which the holder of such a bill could require payment from the maker, or the indorser, *in coin.* This alone has a standard value, approximating to uniformity throughout the mercantile world. If the holder of the bill can exact payment in coin, as always has been the case under the rule recognized in this State, the ten per cent. additional will generally cover the damages caused by the non-payment. But if he may be compelled to take his pay in the paper currency of the country where the maker or indorser lives, that, when converted into funds at the place where the bill is payable, may fall far below the amount originally due. We therefore think that the law by which the holder could compel the maker or the indorser, residing here, to pay the amount in gold or silver coin, was an important and essential element of the rule, constituting a part of it. It was the basis of the usage, without which it never would have been adopted. And when this right, which was so essential a part of the, rule, has been abrogated by statute, temporarily it is to be presumed, the rule itself must be regarded as abolished or suspended. There can no longer be any presumption that merchants make their contracts with reference to it, or with the understanding that their rights and liabilities are to be governed by it.

By the Act of Congress of July 17, 1862, and by subsequent Acts, it is provided that United States' notes "shall be lawful money and a legal tender in payment of all debts, public and private, within the United States, except duties on imports," &c. 12 U. S. Statutes. Assuming the constitutionality of this statute, which is not questioned in this case, the holder of a foreign protested bill of exchange can now compel an indorser residing here to pay him only in our national currency. We are therefore of the opinion that the rule which prevailed when nothing but *coin* was a legal tender in payment, and which must have been based upon that right, cannot be regarded as in force. Judgment should therefore be rendered for the plaintiffs, and the damages assessed according to the rule of the general law merchant in such cases.

WALTON and BARROWS, JJ., concurred.