Cobb *v.* Dows.

———————— •-⋄-• ————————

SAME TERM.    *McCoun, Morse, and Brown,* Justices.

## COBB *vs.* DOWS and others.

C. & B., being the owners of some 5000 bushels of wheat, stored with J. W. & Co., in building No. 12 Atlantic dock, Brooklyn, their agents, D. & G. sold 3037 38-60 bushels thereof to H. G. & Co. and gave to the latter an order upon J. W. & Co. for that quantity, to be delivered "*from No. 12 Atlantic dock.*" A portion of the wheat required to fill this order was taken from a lot of wheat belonging to the plaintiff, stored with J. W. & Co. in building No. 11 Atlantic dock. It was taken by the direction of J. W. the store-keeper, and not by the direction or authority of D. & G. or their principals, C. & B., and there was no proof that either of them knew that the wheat delivered to H. G. & Co. had not been taken from building No. 12, until after the purchase money was paid by H. G. & Co. to D. & G. and by them paid over to their principals, C. & B. In an action by the plaintiff against D. G. C. & B. to recover the value of the wheat so taken from No. 11, as for a conversion, on the ground that D. & G. without the authority or consent of the plaintiff, took the plaintiff's wheat from the storehouse as the property of C. & B. and sold the same and paid over the proceeds of the sales to C. & B. without the authority, knowledge or consent of the plaintiff; *Held* that the action would not lie.

Cobb *v.* Dows.

To maintain an action for the conversion of goods, under such circumstances, the plaintiff must do something more than establish his right of property. He must show that the goods were taken by the defendants, or that they have done some other act which in law will amount to a conversion.

But the proof need not show a tortious taking, or that the defendants acted in bad faith. If it appears that they obtained the goods fairly, from a person whom they had reason to think was the true owner; or if they acted under a mistake as to the plaintiff's title, or under an honest but mistaken belief that the property was their own, they are still liable to the true owner, if their acts in regard to it amount to a conversion; as, if they have taken the property into their own hands, or disposed of it to others, or exercised any dominion whatever over it.

An action for money had and received will lie where the defendant tortiously takes the plaintiff's goods and sells them. But such an action can not be maintained unless the facts proved are such as would enable the plaintiff to sustain an action of trover for the goods.

Where a complaint is framed for the purpose of recovering the value of property, upon the ground of an unlawful conversion, without charging that the defendants have received money to or for the use of the plaintiff, the plaintiff can not recover the value of the goods, as money had and received to his use.

A claim for the unlawful conversion of goods, being founded upon tort, and one for money had and received, upon contract, they are distinct causes of action, and can not be joined in the same suit.

THIS was an appeal by the defendants from a judgment entered at special term upon the report of a referee. The action was brought by Cobb against Dows, Guiteau, Church & Ball. The complaint alledged that Cobb, the plaintiff, on the 9th day of May, 1848, owned and held about 3500 bushels of wheat, then being in the public stores, known as the Atlantic dock store houses in Brooklyn. That Dows & Guiteau being partners, on that day, without the authority and consent of the plaintiff, took 2002 bushels, 54 lbs. and 3 oz of this wheat from the said public stores as being the property of Church & Ball, and sold and disposed of the same for $1,46 per bushel, and received the money, amounting in all to $2924,23. That Dows & Guiteau were at the time the agents and commission merchants, doing business for Church & Ball; that the latter were partners; that Dows & Guiteau had paid to and accounted with the said Church & Ball for the money received for said wheat sold by them and

Cobb v. Dows.

belonging to the plaintiff, as being the property of said Church & Ball, without the authority, knowledge or consent of the plaintiff. The answer of Dows & Guiteau denied that they, without the authority and consent of the plaintiff, took any wheat held and owned by the plaintiff, from said public stores as being the property of Church & Ball, and sold and disposed of the same and received the pay therefor, or that either of them at any time took, or sold and disposed of any wheat owned and held by said plaintiff from said public stores, as being the property of said Church & Ball, or otherwise in any manner whatever. It alledged that Dows & Guiteau were ignorant whether the plaintiff owned and held any wheat, being in said stores, and required him to make proof. The answer of Church & Ball was in form like that of Dows & Guiteau, except that it also denied that Dows & Guiteau at any time paid to them or accounted to them for any money received by Dows & Guiteau on the sale of any wheat for them, except for the sale of wheat which was accounted for by Dows & Guiteau as being in fact the wheat of said Church & Ball. The complaint and each answer were duly verified, and no replication was filed to either answer.

The facts established by the evidence were as follows: On the 20th of November, 1847, Henry C. Sperry, of New-York city, received by consignment from C. H. Davis, of Cayuga, 2179 b. 22 lbs. and 8 oz. of Genesee wheat. On the 3d of December, 1847, he received in like manner from Davis 2540 b. and 2 lbs. more of wheat. Sperry stored this wheat in loft 1 of the store-building No. 11 of the Atlantic dock buildings, Brooklyn, occupied by John Wight & Co. storehousemen. In January, 1848, Cobb, the plaintiff, loaned Davis $6,000, and the receipts of John Wight & Co. given at the time they received the wheat in store, were transferred to Cobb. Dows & Guiteau were commission merchants and partners, doing business in New-York city. Church & Ball, who were partners and resided at Rochester, consigned to Dows & Guiteau in the latter part of November, 1847, 5051 b. 10 lbs. and 2 oz. of Genesee wheat for sale, and directed it stored, if it would not sell for $1,50 per bushel. It reached New-York in the barge "Splendid." Dows

Cobb *v.* Dows.

& Guiteau sent it to the Atlantic dock buildings to be stored, and were furnished with the receipt of John Wight & Co. that it was stored in store No. 12, loft 2. The measurer's returns to them of the measurement of this wheat stated the delivery of it at store No. 12. Dows & Guiteau had no other wheat at this time, or at the time of the transaction out of which this action arose, belonging to Church & Ball. On the 21st of March, 1848, Dows & Guiteau sold to the Hartford Mill & Manufacturing Company, 2013 b. 32 lbs. and 8 oz. of Church & Ball's wheat, and gave an order on the storehouseman to deliver that quantity from store No. 12. The measurer's returns to them of the measurement of such wheat stated the measurement to have been made from No. 12. In May, 1848, Dows & Guiteau agreed to sell to Howes, Godfrey & Co. of New-York city, 3037 $\frac{2.8}{6.0}$ bushels of Genesee wheat, the balance in weight of Church & Ball's wheat, at $1,46 per bushel, and gave Howes, Godfrey & Co. an order on J. Wight & Co. directing the latter to deliver to them this quantity from "No. 12 Atlantic dock." All that took place between Howes, Godfrey & Co. and Dows & Guiteau, was, that the former bargained with the latter for this quantity of wheat, received an order upon Wight & Co. and when they got the quantity of wheat named in it, paid for it. The order was in these words:

"New-York, May 8th, 1848.
Messrs. J. Wight & Co.:

Please deliver Messrs. Howes, Godfrey & Co. three thousand and thirty-seven $\frac{2.8}{6.0}$ bush. Genesee wheat from No. 12 Atlantic dock, and oblige                                     Dows & Guiteau,
3037 $\frac{2.8}{6.0}$ bush.                                                            per Hill."

Howes, Godfrey & Co. handed the order to Mr. Roman, the measurer, or to the captain of the Hero, the vessel in which the wheat was taken away. The measurer, in filling this order, took from the 2d loft of store No. 12, 1033 b. and 30 lbs. of wheat, and then by order of John Wight took the balance, being 2002 b. 54 lbs. and 3 oz. from the 1st loft of No. 11. The wheat taken from No. 11 was the wheat consigned to Sperry, and for this taking of it, Cobb claimed to recover its value of the defendants.

VOL. IX.                          30

Neither Dows nor Guiteau was present when the wheat was taken from No. 11. A part of Church & Ball's wheat, viz. 1200 to 1500 bushels, more or less, was in fact put in store No. 11, but without their knowledge. Neither of the defendants was present when Cobb's wheat was taken from No. 11, nor knew of it at the time; nor had either of them any notice of it when Howes, Godfrey & Co. paid Dows & Guiteau for the quantity of wheat named in the above order of May 8, 1848, nor until after Dows & Guiteau had accounted with and paid over the money to Church & Ball. Neither of the defendants knew that any of Church & Ball's wheat had been put in No. 11. The money which Dows & Guiteau received from Howes, Godfrey & Co. they paid over to Church & Ball before either of the defendants had notice that Wight delivered any wheat from store No. 11 to Howes, Godfrey & Co. There was no attempt to prove where the wheat was which Howes, Godfrey & Co. took from No. 11, or that they had in any way disposed of it.

The referee reported in favor of the plaintiff, for $3126,43, the whole amount claimed, including interest, and judgment was entered upon the report.

*G. M. Speir*, for the plaintiff. I. The wheat sued for, was, in fact, delivered on the order of Dows & Guiteau, as factors of Church & Ball, to satisfy a bargain by them made, and the money therefor came to the hands of both of them; this money was, in fact, the proceeds of the plaintiff's wheat. II. Where personal property is wrongfully, even by mistake, and without knowledge of the wrong, converted to the use of others, the latter are liable for it. The wheat in question, in fact, came to the use of the defendants, and satisfied their sale to Howes, Godfrey & Co. (2 *Kent's Com.* 320 to 324. *Saltus* v. *Everitt*, 20 *Wend.* 267. *Hoffman* v. *Carow*, 22 *Id.* 285. *Williams* v. *Merle*, 11 *Id.* 80.) III. Dows & Guiteau and Church & Ball both received money on account of and as the proceeds of the wheat in question belonging to the plaintiff; they are liable for it. (*Hoffman* v. *Carow*, 22 *Wend.* 318. *Peer* v. *Humphrey*, 2 *Ad & Ellis*, 500. *Parker* v. *Godin*, 2 *Strange*, 813.)

Cobb v. Dows.

IV. The right to recover does not depend on agency or ratification; but on the fact that the plaintiff's property, without his assent, was converted to the defendants' use. Knowledge as to the title to the property converted by mistake or fraud, is immaterial. ( *Williams* v. *Merle,* 11 *Wend.* 80. *Everitt* v. *Coffin,* 6 *Id.* 609. *Perkins* v. *Smith,* 1 *Wilson,* 328. *Stevens* v. *Elwell,* 4 *Maule & Sel.* 259. *McCombie* v. *Davis,* 6 *East,* 538. *Potter* v. *Starkie, cited in Stevens* v. *Elwell,* 4 *Maule & Sel.* 260. *Cooper* v. *Chitty,* 1 *Burr.* 20.) V. Wight & Co. were agents of defendants, and a mistake or fraud by them in the execution of their agency would not relieve the defendants, who received the benefit of the fraud, from accountability. VI. The only relationship of Wight & Co. to the plaintiff in the subject matter of this action, was that of naked bailees. They had no right in that capacity, to dispose of his wheat, nor could they give any title to it; and the defendants having obtained the wheat and the proceeds of it, without the plaintiff's authority or assent, are liable to him as the true owner. ( *Covill* v. *Hill,* 4 *Denio,* 323. *Hartop* v. *Hoare,* 3 *Atk.* 44.) VII. If the wheat of defendants had been previously delivered, rightfully or wrongfully, then they have received the plaintiff's wheat in compensation; and that, as to him, wrongfully, and they must answer for it. If the wheat of defendants had not been previously delivered, then the defendants, having their own wheat untouched, have also had the plaintiff's wheat converted to their use, and are liable for it. VIII. The allegation that the plaintiff could recover of the defendants' vendees, is no answer to the plaintiff; for the conversion being proved, the liability is upon all through whose hands the property has passed against the right of the true owner. And a recovery from the defendants' vendee would only turn the latter against them for money by them received on a mistake, and without consideration.

*E. Sandford,* for the defendants, argued the following points. *First,* as to all the defendants. I. Neither of the defendants is liable for the taking of this wheat, or for the delivery of it by Wight to Howes, Godfrey & Co. Neither of them took it or

Cobb v. Dows.

delivered it, or assisted in or was present at, or knew of, or ever assented to the taking or delivery of it. This is incontestibly true, as a matter of fact, and there is no evidence tending to prove the contrary thereof. There is no evidence of any sale of it, by any person. II. Each and all of the allegations in the complaint, if they are to be regarded as allegations of mere matters of fact, are without a particle of evidence to support them. If claimed to be true in judgment of law, though untrue as matters of fact, then it is evident that all the questions arising upon the evidence, are questions of law. Do the facts proved warrant the legal conclusion of the referee, that Dows & Guiteau wrongfully took this wheat, sold it, as being the property of Church & Ball, at $1,46 per bushel, and received payment therefor? The referee has decided that they did so take and sell it, and the defendants insist that the decision is erroneous. III. The taking or delivery by Wight, was not authorized by the order from Dows & Guiteau. He had no authority but that. That authority is special and specific, and limits his right, discretion, and power to act, to store No. 12. If he took wheat from any other store, it was a deliberate trespass by him, for which Dows & Guiteau are not responsible. (*McManus* v. *Cricket*, 1 *East*, 106. *Arnold* v. *Hallenback*, 5 *Wend*. 32. *Broughton* v. *Whallon*, 8 *Id*. 474. *Theob. Prin. and Ag't, p.* 296, 297, 298, § 2. *Gorham* v. *Gale*, 7 *Cowen*, 745. *North River Bank* v. *Aymar*, 3 *Hill*, 262. *Beals* v. *Allen*, 18 *John*. 362. *Rossiter* v. *Rossiter*, 8 *Wend*. 494. *Averill* v. *Williams*, 1 *Denio*, 510. *Same* v. *Same*, 4 *Id*. 295. *Colvin* v. *Holbrook*, 2 *Comst*. 126.) IV. As warehouseman, Wight had no authority to sell or deliver the wheat. A purchaser of the wheat from him would be liable to the owner in trespass or trover. (*Arnold* v. *Hallenbeck*, 5 *Wend*. 32. *Broughton* v *Whallon*, 8 *Id*. 474. *Wilson* v. *King et al*, 2 *Campb. N. P. R.* 335. 2 *Kent*, 622.) V. Wight occupied in respect to these parties and the subject matter of the action, three distinct positions. 1st. He was bailee of Cobb's wheat. 2d. He was bailee of Church & Ball's wheat. 3d. He was a limited and special agent of Dows & Guiteau under their order to deliver wheat from store No. 12, and from no other

place, and to do nothing else. ( *Williams* v. *Nichols*, 13 *Wend.*
58.) Dows & Guiteau are only liable for what Wight might
lawfully do in No. 12 under this order. As bailee or warehouse-
man, he was as much the agent of Cobb as of Dows & Guiteau.
If his unauthorized delivery can, in any sense, as a matter of
law, be deemed a delivery by Dows & Guiteau, and with their
assent, in the same sense as matter of law, it must also be
deemed to be equally a delivery by Cobb, and with his assent, as
being, in fact, the property of Church & Ball. If the law will
not deem that either assented to it while ignorant of the act,
then Cobb has lost his wheat by the fraud and trespass of his
own servant or bailee, and must look to him, or those who took
the wheat from him. VI. Receiving money from Howes, God-
frey & Co. for the quantity of wheat named in the order, and
such money being paid for so much wheat received conformably
to the order, in ignorance that the whole quantity was not ob-
tained from No. 12, is not a ratification of the trespass commit-
ted in No. 11. A party can not, by implication of law, ratify
what he knows nothing about. (*Evans* v. *Wells*, 22 *Wend.* 342.
*Navigation Co.* v. *Dandridge*, 8 *Gill & John.* 323. *Blevins*
v. *Pope*, 7 *Ala. R.* 371. *Palmerton* v. *Huxford*, 4 *Denio*, 168.)
On these facts the defendants could not be charged as trespass-
ers, or in trover. In other words, if Howes, Godfrey & Co. had
not paid any money to Dows & Guiteau, there can be no pre-
tense that they or Church & Ball would be liable to the plain-
tiff. VII. The defendants can not, in consequence of the receipt
of the money paid by Howes, Godfrey & Co. be charged in this
action, nor at all, as for so much money received to Cobb's use.
(1.) They can not be so charged in this action, because it is an ac-
tion for a tortious taking and sale. There has not been, in fact,
or in law, a taking or sale by either defendant. This is not a mere
case of variance, but "a failure of proof." (*Code*, § 172.) Such
a cause of action could not be joined with one arising upon im-
plied contract. (*Code*, § 167.) The referee has decided that
there was a tortious taking and sale, which is clearly error.
(2.) They could not be so charged at all, even if the complaint
had set forth an action in *indebitatus assumpsit*, and based the

Cobb v. Dows.

plaintiff's right to recover, on the ground that the defendants had received so much money to his use. Such an action can not be sustained, unless there has been an actual sale or conversion by the party sued, or for him; or, unless he has received the proceeds as the fruits of such sale or conversion, and holds them, or has applied them to his own benefit. (*Jones* v. *Hoare*, 5 *Pick.* 285. *Willett* v. *Willett*, 3 *Watts*, 277. *Munson* v. *Rogers*, 2 *Scam.* 317. *Law & Parker* v. *Nunn*, 3 *Kelly*, 90. *Lightly* v. *Clouston*, 1 *Taunt.* 114, 115. *Bennett* v. *Francis*, 2 *Bos. & Pull.* 554. *McKnight* v. *Dunlop*, 4 *Barb. S. C. R.* 42. *Osborn* v. *Bell*, 5 *Denio*, 370.) Then *indebitatus assumpsit* is allowed on the theory that, as matter of law, by bringing such an action the owner assents to and affirms the sale as an actual sale of his property, and that owning the property, he may own the proceeds in lieu of it, if he thus affirms the sale. (*Same cases, and Lamine* v. *Dorrell*, 2 *Ld. Raym.* 1216.) But if he thus affirms the contract and brings an action on the implied assumpsit to pay him the proceeds, he will be bound by all the rules applicable to actions *ex contractu.* He must show that all the defendants received the money to their joint use or benefit, or he will fail in the action. (*Manahan* v. *Gibbons*, 19 *John.* 427, 435.) In some cases, a defendant may set off a demand owing by the person from whom he received the money, (*Billon* v. *Hyde*, 1 *Vesey, sen.* 326,) and always a debt owing by plaintiff. (*Lightly* v. *Clouston*, 1 *Taunt.* 114.) (3.) They could not be so charged at all, even in an action on an implied contract, because the plaintiff's wheat has not been sold. It had not, to their knowledge, been in any way converted. They never received any thing as the fruits or proceeds of a sale or conversion of it. (4.) They could not, even in such an action, be charged at all, because the money received was the money of Howes, Godfrey & Co. It was never Cobb's. It was not paid as the price of his property, nor as the price of property taken from No. 11. It was paid as the price of property, and as owing for property taken from No. 12. It was so paid by men who, in person or by their agents, acted in the taking and had knowledge of the facts, and who never could recover it back from the defendants.

Cobb *v.* Dows.

(*Sprague* v. *Birdsall*, 2 *Cowen*, 419.)   To make the defendants liable in such a case, they must be held liable, even if Wight had gone with Howes, Godfrey & Co.'s agents, the captain and measurer, to Albany or Boston, and filled the order, and after having done so, Howes, Godfrey & Co. had paid for the quantity named in the order as having been obtained conformably to its directions, which is absurd.   (5.) There are no considerations presented by the evidence to induce the court to strain points of law, or stretch imaginary equities in order to charge the defendants who are innocent in fact and law, and thus by indirection exonerate the trespassers.   Plaintiff's remedy against the wrong-doers is clear and ample.   There is no insinuation against the responsibility of Howes, Godfrey & Co. who were parties to the wrongful taking, concealed it, and paid for the delivery from No. 12.

*Second,* as to the defendants Dows & Guiteau, only.   I. Dows & Guiteau are not liable.   The cause of action alledged against them is trespass.   They are not trespassers in fact or by impli-cation of law.   There is an entire failure of proof of the alledged cause of action.   (*Code,* § 171.)   II. If it can be deemed to be in its nature an action of *indebitatus assumpsit,* for money had and received to the plaintiff's use, then the court must treat the equity of the case as being according to this theory of it.   The plaintiff, according to this theory of his action, and in his com-plaint, says, they acted as agents of Church & Ball, as such re-ceived the money, and that they had paid over this money to their principals.   They undoubtedly acted innocently throughout.   In such an action, the plaintiff is bound by all the rules applicable to actions *ex contractu,* and Dows & Guiteau may be exonerated from all claim, on any grounds which equitably bar it on this theory of the action.   A recovery must leave them in *statu quo,* or they can not be charged.   (*Boas* v. *Updegrove,* 5 *Barr,* 516. *Cary* v. *Curtis,* 3 *How. S. C. R.* 236, 240, 247.   *Tope* v. *Hockin,* 7 *Barn. & Cress.* 101.   *Coles* v. *Wright,* 4 *Taunt.* 198.)   III. If this be deemed to be the theory and nature of this action, the plaintiff can not recover without showing that all the defendants received the moneys to their joint use.   (*Manahan*

v. *Gibbons*, 19 *John.* 427.) The fact that the money may have gone through their hands is not enough to charge them. (*Idem. Billon* v. *Hyde*, 1 *Vesey, sen.* 326. *Cobb* v. *Berke*, 6 *Q. B.* 930.) IV. On this theory of the action, Dows & Guiteau received the money as agents. They received it innocently, and have paid it to their principals without notice, and they are not liable. (*Mowatt* v. *McClellan*, 1 *Wend.* 173. *Boas* v. *Updegrove*, 5 *Barr*, 516. *Horsfall* v. *Handley*, 8 *Taunt.* 136. *Sadler* v. *Evans*, 4 *Burr.* 1984. *Cary* v. *Curtis*, 3 *How. S. C. R.* 247 *to* 251.) V. There is no exception to this rule, unless the agent obtained the money by some illegal or tortious act, as in *Ripley* v. *Gelston*, (9 *John.* 201;) or knew when he took it that it was the plaintiff's money, and was paid to him without authority, as in *Amidon* v. *Wheeler*, (3 *Hill*, 137;) or took it on conditions not complied with when he paid it over, as in *Edwards* v. *Hodding*, (5 *Taunt.* 815;) or unless he paid it over after actual notice not to do so, or under circumstances equivalent to actual notice, as in *Hearsay* v. *Pruyn*, (7 *John* 179;) and *Young* v. *Marshall et al.* (8 *Bing.* 43.) VI. Church & Ball could have brought an action in their own names against Howes, Godfrey & Co. on the contract made by the latter with Dows & Guiteau. (*Taintor* v. *Prendergast*, 3 *Hill* 72.) All the money Dows & Guiteau received, was received as agents, and has been paid to their principals. They neither received money, nor applied the money received to their own benefit. This is not only true in fact, but it is true in law. (19 *John.* 427.) They are therefore not liable, even if the action can be regarded as an *indebitatus* assumpsit. If it can not be regarded as such an action, but only as an action of trespass, then they are not liable. (*Code*, § 171.) In any aspect, the judgment is as to them against the law and equity of the case, and should be reversed.

*Third*, as to the defendants Church & Ball, only. Church & Ball neither took, delivered, nor sold any of Cobb's wheat, nor authorized any one to do it. Nor have they ever assented to any taking, sale or delivery of it. They never employed, nor knew of the employment of Wight, in any manner, to make any delivery of their wheat. The money paid to them, was paid to

Cobb v. Dows.

and received by them, as proceeds of the sale of their own wheat,, on a sale thereof by the persons to whom they had consigned it for that purpose. It was so paid to and received by them, without notice or suspicion that Wight, or Howes, Godfrey & Co. had committed a trespass upon the plaintiff's property or taken his wheat. They have not received any money belonging to Cobb, or to which he ever had any right. They are not liable for the trespass of Howes, Godfrey & Co. or of Wight. Neither of them acted by the authority of Church & Ball, or for them, nor have they received any thing as being, or in fact being, the fruits of their wrongful acts. Howes, Godfrey & Co. did not pay any thing as a payment for wheat taken from No. 11, but specially and exclusively as a payment for wheat taken from No. 12. If they are liable for the money received, at all, it is not their duty to pay the plaintiff. The money which they received did not belong to the plaintiff. If they received the money without legal authority, it is their duty to pay it back to the party from whom they collected it. The law can not imply a promise that Church & Ball will pay money belonging to Howes, Godfrey & Co. to the plaintiff. Suppose Howes, Godfrey & Co. had instituted a suit for this same money, and such suit and the present suit had been brought to trial at the same time, before the same referee, would both parties have been entitled to recover? If not, in favor of whom would the law imply the promise to pay on the part of Church & Ball? Clearly, not to the plaintiff. If any duty arises, it would be their duty to pay Howes, Godfrey & Co. and the law never implies a promise to pay, unless duty creates the obligation to pay. (*Cary* v. *Curtis*, 3 *How. S. C. R.* 236, 251.)

*By the Court,* BROWN, J. It is established by the proof that some 5000 bushels of the wheat of the defendants was in store with John Wight and Co., in building No. 12, Atlantic dock, and that at the time the defendants, Dows & Guiteau, made the sale to Hows, Godfrey & Co. and drew the order upon John Wight & Co. for the 3037 bushels $\frac{22}{60}$, they were entitled to that quantity from building No. 12. The sale, therefore, was a sale

of the wheat of the defendants and not of the plaintiffs, and the order was to deliver wheat from No. 12, and not from No. 11. In the sale, and in the giving of the order, there was no attempt to dispose of, or exercise any control over, the wheat of the plaintiffs. A portion of the wheat to fill the order was taken from building No. 11 by direction of John Wight, and not by the direction or authority of the defendants ; and there is no evidence that either of the defendants knew that the wheat delivered to Howes, Godfrey & Co. had not been taken from No. 12, until after the money was paid by them to Dows & Guiteau, and by them paid over to their principals, Church & Ball.

The complaint charges that the defendants, Dows & Guiteau, without the authority or consent of the plaintiffs, took the wheat of the plaintiffs from the public stores as the property of Church & Ball, and sold the same and paid over the proceeds of the sales to Church & Ball, without the authority, knowledge, or assent of the plaintiffs. It is a rule of the common law, that a man can not be divested of his property without his consent. There are some exceptions, but the present case is not one of them. Possession does not carry with it the evidence of property, so as to protect a person acquiring it by purchase in good faith and in the usual course of trade, except when the property is cash, bank bills and bills payable to bearer. The plaintiff has not parted with his property in the wheat stored in building No. 11, and his right to re-possess himself of it whenever he may find it, or to recover its value from those who took it, or into whose hands it may have come, is clear and unquestionable. The question here is, whether he can recover from the defendants. To maintain the charge contained in the complaint, he must do something more than establish his right of property. He must show that it was taken by the defendants, or that they have done some other act which in law will amount to a conversion. The proof need not show a tortious taking, or that the defendants acted in bad faith. If it should appear that they obtained the goods fairly from a person whom they had reason to think was the true owner, or if they acted under a mistake as to the plaintiff's title, or under an honest but mistaken belief that

the property was their own, they would still be liable to the plaintiffs, if their acts in regard to it amount to a conversion. If they have taken it into their own hands, or disposed of it to others, or exercised any dominion over it whatever, they are guilty of the conversion, and their liability to the plaintiffs is established. In the cases cited by the plaintiff's counsel upon the argument, the defendants were charged with the conversion, upon this principle. In *Perkins* v. *Smith,* (1 *Wilson,* 328,) the defendant was the servant of the plaintiff and disposed of the goods. In *Everett* v. *Coffin & Cartwright,* (6 *Wend.* 603,) the defendants received the goods from the master of the vessel with whom they were shipped, and by his direction sold them, in ignorance of the rights of the true owner. In *Williams & Chapin* v. *Merle,* (11 *Wend.* 80,) the defendant was a produce broker and purchased and took the goods into his possession in good faith, for a valuable consideration, from a clerk who had no authority to sell. In *Saltus* v. *Everitt,* (20 *Wend.* 267,) decided in the court of errors, Saltus, the defendant below, purchased the lead in question from Coffin & Cartwright, the defendants in the case, reported in 11 Wendell, at page 80. In *Hoffman* v. *Carow,* (22 *Wend.* 285,) the defendant, an auctioneer, sold the goods, which were stolen, and paid over the proceeds without notice of the felony. And in *Covill* v. *Hill & Sunford,* (4 *Denio,* 323,) the lumber in dispute was delivered into the hands of the defendants. The authorities all proceed upon the ground that the goods had been actually or constructively in the possession of the defendant in the action, or that he has interfered with them himself, or that others have done so by his direction. In the present case there is an entire absence of evidence to establish anything of the kind. The order given by the defendants was explicit in its directions to deliver from building No. 12. It indicates all the defendants had done and all they meant to do. It could not be misunderstood by those to whom it was given or those to whom it was directed. And to construe it into an authority to deliver wheat from No. 11, or any other place, would be to abuse and pervert the uses of written language. John Wight & Co. were not the agents

of the defendants in the sense for which the plaintiffs contend. Their power was limited to the delivery of the wheat from building No. 12, and if the delivery from building No. 11, in violation of the injunctions of the order, could charge the defendants with the conversion, then the defendants would be equally chargeable if the wheat had been taken from any other store, or from any other place, no matter where. No rational system of jurisprudence could entertain such a rule. The acts of the defendants in regard to the delivery of the property do not, therefore, make out the conversion.

Did the defendants, by receiving into their own hands payment for the wheat delivered, approve and confirm the delivery from building No. 11, so as to make this act of John Wight their own ? It will be remembered that they were entitled to have delivered to their order from building No. 12, the quantity of wheat sold to Howes, Godfrey & Co. and therein mentioned, and that the order was in part filled from No. 12. The conduct of the defendants must be such as to signify, unequivocally, that they recognized and approved of the taking from building No. 11. A portion of the wheat was in fact delivered from building No. 12 in conformity with the directions of the order, and for this quantity the defendants were entitled to recover payment from Howes, Godfrey & Co. Without some knowledge that their orders had been disobeyed, some intimation of the wrong which had been committed, or some notice that the money was not all the proceeds of their own property, the mere act of receiving the money can not be regarded as a confirmation of what had been done at building No. 11. Had the wheat of the plaintiffs upon that delivery come to the possession of the defendants, then however innocent they might have been of any design to commit a wrong or to signify their approbation of a wrong committed by others, and however ignorant they might have been of the taking from No. 11, still they would be liable to the plaintiffs upon the authority of the cases cited. But the property never came to their hands ; it was not taken by their directions, and when the money was paid over they had no notice that a portion of the wheat had been taken from building No. 11, or that the money

Cobb *v.* Dows.

was in payment of any other property than that in store at build-
ing No. 12. The defendants could not ratify and adopt as their
own that of which they had no knowledge. Where the agent ex-
ceeds his authority no act of the principal will be construed into
a ratification, unless it be done with a full knowledge of the
facts and circumstances. (*Story on Agency*, § 253, *and the cases
cited in the notes.* 4 *Bing.* 727. 22 *Wendell*, 324.)

The plaintiff intimates in his third point, that the defendants
are liable to him for money had and received to his use. To en-
title the plaintiff to recover upon this ground he must show that
the money which he claims is his money. The action for money
had and received applies to almost every case where a person
has received money which in equity and good conscience he
should refund to the true owner. "It lies where one has had
and received money belonging to another without any valuable
consideration given on the receiver's part ; for the law construes
this to be money had and received for the use of the owner only ;
and implies that the person so receiving, promised and under-
took to account for it to the true proprietor." (3 *Black. Com.*
163.) The rule, however, is subject to some limitations ; and
it is not in every case where one man has money which another
ought to have, that the action for money had and received will
lie. (3 *Bos. & Pull.* 169.) Where the defendant tortiously
takes the plaintiff's goods and sells them this action lies. (*Chit.
on Cont. 5th ed.* 607, *note g.*) And where the goods were taken
by others and the defendant subsequently received and sold them
and received the avails, the action was also held to lie. (2 *Hall*,
453.) But in those cases the taking or receiving of the property
so as to constitute a conversion, were as essential to the plain-
tiff's recovery as the sale and the receipt of the money. And I
apprehend that unless the facts were such as to enable the plain-
tiff to maintain his action of trover for the goods, he could not
recover. There is, however, this other obstacle in the way of
the plaintiff's claim for money had and received, in this action.
The complaint is framed to recover the value of the property
upon the ground of unlawful conversion. It does not charge
that the defendants have received money to or for the use of the

plaintiff. The claim for the unlawful conversion is founded upon tort; that for money had and received upon contract. They are distinct causes of action, and can not be joined in the same suit. (*Code of Procedure*, § 167.) Indeed, the plaintiff has not attempted to unite them; for the complaint, although it sets out a part of the evidence in the cause, proceeds exclusively upon the unlawful conversion.

I am of opinion that the report of the referee should be set aside, and judgment should be entered for the defendants, with costs.

Judgment accordingly.

WASHINGTON GENERAL TERM, May, 1848.   *Cady, Paige, Willard, and Hand,* Justices.