By the Court. Duer, Ch. J.
It was clearly proved upon *500 the trial, and is not denied, that the plaintiff was the sole owner of the wool in controversy, when it was sold by Tuthill to the defendants, and consequently, unless the sale was made by his authority, he must be entitled to recover. The undoubted rule of the common law, that no person can give a better title to another than he himself possesses—nemo plus juris in alium iransferre potest quarn ipse Tidbet—is applicable, with certain exceptions, to every sale of goods, whatever may be their character; and hence, unless it was established upon the trial that, by force of some known exception from the rule, the defendants are entitled to protection as bond fide purchasers, the complaint ought not to have been dismissed, and a new trial must be granted. . As it is certain that Tuthill was not the owner of the wool, there must be a new trial, unless the evidence given was conclusive to show, either that he had an express authority to sell, or that the defendants were justified in believing that he possessed this authority, and that the plaintiff was estopped from denying it.
The whole argument for the defendants, therefore, rests upon the proposition, that we are bound to say, upon the evidence before us, that Tuthill possessed either an express or an implied authority to sell, and to give to the defendants a valid and unimpeachable title.
The allegation that he had an express authority, will not require many observations. So far from being sustained by the evidence, it is very clearly disproved, not only by the oral testimony of Baker, which is uncontradicted, but by the letters which the defendants themselves produced and read upon the trial. It was proved by Baker, that, as the agent of the plaintiff, he placed the wool in the possession of Davis & Peabody, as mere bailees for storage and safe keeping; that he gave to them no power whatever, of disposition, or to contract, but imposed on them the duty of communicating to him or the plaintiff all such offers of purchase as might be made to them, and if it be said that this conveyed to them an authority to receive such offers, it is not possible to contend that this was equivalent to an authority to sell. It was further proved, that the agreement and understanding with Tuthill, when he succeeded Davis & Peabody, was exactly the same; and if it may be inferred from the evidence *501 and correspondence that for a time he was entrusted with a power to sell, the proof is decisive that this authority was revoked several weeks "before he made the sale to the defendants. It was effectually revoked when he accepted the order of the plaintiff, requiring him to deliver the wool to S. S. Raplie & Co., to whom, as the plaintiff informed him in his letter of the 18th February, the power of making a sale was from that time exclusively given. The sale fraudulently made by him to the defendants, contrary, as he well knew, to the wishes of the plaintiff, and in the exercise of a power that had been expressly denied to him, was on the 12th or 13th of March. Holding it, therefore, to be certain that Tuthill, in making the sale which is set up as a defence, acted without authority from the plaintiff, and in plain violation of his trust, the question that remains is, whether the trust has clothed him, by implication, with an authority to sell, which rendered the transaction valid and binding on the plaintiff. The contention on behalf of the defendants is, that where the owner of goods places them in the possession of a person whose known occupation is that of a commission merchant or factor, he by that act holds him out to the world as having a general and unlimited authority to sell, and consequently, when a sale is made to a purchaser in good faith, is not allowed to question its validity.
How it is undoubtedly true, that when an agent has a general authority to sell, or is held out to the world by his principal as possessing that authority, a sale made by him to an innocent purchaser, although in violation of his duty and of his secret instructions, cannot be impeached; and we entirely agree with - Mr. Justice Story, that a contrary doctrine would lead to great abuses, and open a wide door to injustice and fraud, (Story on Agency, §§ 127-133,) but it by no means follows that the mere possession of merchantable goods by a factor is evidence to the world that he has an unlimited authority to sell them, and precludes the owner from showing that they were entrusted to him, not for sale, but for a wholly different purpose, such as transportation to another place, or temporary custody. It is not denied that there are many dicta to this effect, that have been adopted by text writers, but we fully believe that there has been no express adjudication. After a careful research, we were unable *502 to discover any, and we were certainly not referred to any by the counsel for the defendants.
The only authorities to which we were referred by the learned counsel, are Pickering v. Busk, (15 East 38); Whitehead v. Tuckett, (id. 400), and the observations of Senator Verplanck, in Saltus v. Everett, (20 Wend. 281.)
Whitehead v. Tuckett, may be at once dismissed as irrelevant, for the general authority of the agent, in this case, was not implied, but distinctly proved—and the case is only one of a numerous class that have settled the doctrine, that the law will not permit the title of an innocent purchaser, to be defeated by his ignorance of the private instructions of an agent acting within the scope of his general authority.
Nor does Pickering v. Busk, as an actual decision, tend to establish the doctrine it was cited to prove; As a decision, it has no more relevancy to the question under consideration, than Whitehead v. Tuckett. The principal in this case had clothed the agent with a legal title to the property in dispute, and had thus enabled him as the apparent owner to sell it in his own name. We understand Mr. J. Story to admit that this was the true ground of the decision, (Story on Agency, § 164), and it was certainly upon these facts that Lord Ellenborough laid the stress of his opinion. That he who has the legal title may give a full title to a prior purchaser, has never been doubted; that there would be manifest injustice in permitting the owner to divest the title which he had thus enabled the faithless agent to convey, is confessed by all.
But although Pickering v. Busk, as an adjudication, is very far from sustaining the broad position upon which the defendant’s counsel relied, that the mere possession of property by a factor is an implied authority to sell, it cannot be denied, that the position seems to be justified to some extent, by some of the observations that were made by Lord Ellenborough and his brethren, in the delivery of their opinions, but whether these extra-judicial dicta, for such they were, are a sufficient foundation for the doctrine, may deserve consideration. They form, apparently, a very slight basis of authority for the introduction of a new and wide exception from the sound rules of the common law, that possession is only presumptive existence of ownership or *503 authority, and that he who has in truth no right to sell, can give no title to another.
As to Saltus v. Everett, the judgment of the Court was in strict conformity to the rules of the common law, and the observations of Mr. Senator Verplanck, in his able opinion, were built entirely upon the dicta in Pickering v. Busk. They show his interpretation of those dicta, but make no addition to their authority.
For myself, I entertain very serious doubts whether the observations of the judges in Pickering v. Busk, detached from the context as they have been, have been rightly understood. I strongly incline to believe that a construction has been given to them that they were never designed to bear, and that such is the fact, in relation to those of one of the most eminent of these Judges, appears to be certain. The language of Mr. Justice Bayley, the Judge to whom I refer, was—“ If a man puts goods into another’s custody, whose common business it is to sell, without any limitation of his authority, he confers an implied authority to sell.” Mr. Senator Yerplanck, in citing this passage, omits the qualifying and significant words, “ without any limitation of his authority,” and this omission led him to attribute a meaning to the learned Judge, widely different from that which the language of the Judge, when the omission is supplied, plainly conveys.
Mr. J. Bayley evidently meant, that an authority to sell will be implied only when a different object or purpose is not declared, but that when the exercise of the authority is limited, and a fortiori when the authority itself is expressly withheld, a sale made by the agent or bailee in violation of his duty, will no longer be binding on the owner. And such, I am persuaded, was not only his meaning, but that of the Court. A repeated perusal of all the opinions that were given, has convinced me that the ground of the decision was, that the facts "of the case, in the absence of contrary proof, warranted the belief that the hemp—the subject in controversy—was, in reality,, placed in the hands of the broker for the purpose of sale, and that we have, therefore, no right to say or suppose, that had it been proved, that such was not the purpose and intention of the plaintiff, it would not have been held that he was entitled to recover. It was held that he was bound by the sale, because the proof was deemed to be sufficient, that he intended a sale should be made. Hence, Pickering *504 V. Busk, rightly interpreted, so far from being an authority for the defence now relied on, tends to prove its insufficiency. It was insisted by the counsel for the defendants, that the defence is frilly sustained by the provision of the act “ relative to principals, and factors or agents,” (1 R. Stat. p. 774); but an attentive consideration of the statutory provisions has led us to an opposite conclusion. As we understand these provisions, so far from countenancing the defence, they prohibit and exclude it. They are directly inconsistent with the position that the possession of goods by a factor with the consent -of the owner, is alone conclusive evidence of his authority to sell them, and precludes the owner from showing that they were put into his custody, not for the purpose of sale, but for storage only.
We do not doubt that the 3d section of this important statute was meant to be declaratory of the common law as it was understood by the framers of the act, and is now understood by ourselves. It accordingly renders valid every contract made by a factor or agent, for the sale or disposition of any merchandize in his possession, in two classes of cases: first, where the factor has the documentary evidence of title; and second, where he has been entrusted with the possession of the merchandize for the purpose of sale. It seems to us impossible to doubt that these last words, “for the purpose of sale,” by their natural and just interpretation, confine the protection that in the second class of cases was meant to be given to purchasers, to the cases where the owner has entrusted the merchandize to the factor or agent, with the intention of enabling him to sell it, and with an authority to sell it; and, consequently, that the words are not applicable at all, when it is proved that no such intention existed, and that no such authority was meant to be given. If this construction be rejected, and that of the defendant’s counsel be adopted, it will be found that the words, “for the purpose of sale,” are superfluous or unmeaning. They are useless, if the factor may sell, no matter for what purpose the merchandize has been entrusted to him, and the possession is alone conclusive evidence of his right to sell. They are unmeaning, if they do not forbid him to sell when the merchandize has been entrusted to him for any other purpose than that of sale. There is a manifest solecism in saying that goods are entrusted to a factor for sale, which it is proved *505 that he received for storage only; and, if we adopt the defendant’s construction, to get rid of the solecism, the words “for the purpose of sale” must be struck out from the law. This, assuredly, we have no right to do, but, on the contrary, are bound to give effect to those words, if a reasonable and consistent interpretation can be given to them. We are bound to say that their natural and obvious is their true meaning, unless it can be shown that it is irreconeileable with the other provisions of the statute. It is a sound and controlling rule of interpretation, that “ verba aliquid operari debent.”
If we could admit that the third section of the statute is fairly susceptible of an interpretation different from that which has been stated, and consistent with the defence that is relied on, we must still hold that every reasonable doubt, as to our duty in the disposition of the case before us, is removed by the positive language of the 6th section of the statute, which is in the words following:
“ § 6. Nothing contained in this act shall authorize a common carrier, warehouse-keeper, or other person, to whom merchandise or other property may be committed for transportation or storage only, to sell or hypothecate the same.” 1 R. S., p. 774.)
It cannot be.said that there is any ambiguity here. The evident meaning of the Legislature is, that no sale made by a common carrier, warehouse-keeper, or other person, to whom property is committed for transportation or storage only, shall operate to divest the title of the true owners; in other words, that every such sale, as against the owner, shall be wholly void. We are unable to see that there are any grounds whatever for limiting the application of the words, “ or other person,” &c., to any particular class of persons; to those, for example, whose ordinary business is the transportation or storage of goods entrusted to their charge. Indeed, upon this construction, these added words were unnecessary; those that precede them were alone sufficient. It seems to us plain, that it is the special purpose for which merchandize or other property is committed, and not the special character or business of the person to whom it is committed, that takes from him the authority to sell that he might otherwise be held to possess. We are therefore convinced that no court of *506 justice has the right to say that the words, “or other person,” &c., are not just as applicable to commission merchants and factors, to whom goods are entrusted for transportation or storage only, as to any other class or description of persons whatever; and if this be so, there is an end of this controversy. The proof is conclusive that the plaintiff’s wool was placed in the custody of Davis & Peabody, and was left in the custody of Tuthill ‘1 for storage only.” Hence the sale made by Tuthill, as against the plaintiff, was wholly void. It was an unauthorized and fraudulent act, and however innocent the defendants may be, it passed no title which, as against the plaintiff, they can be permitted to allege. Such is the necessary effect of that which we deem to be the necessary construction of the statute.
It follows, that in our opinion, the plaintiff’s complaint ought not to have been dismissed upon the trial, but that, upon the contrary, the Jury ought to have been instructed that upon the evidence before them, he was entitled to their verdict.
We must, therefore, order a new trial, with costs to abide the event.
There are a few words which, although not necessary to our decision, I deem it expedient to add. _ x
If, notwithstanding the provisions of the Act “ Relative to Principals, and Factors or Agents,” which, from some unexplained cause, seem hitherto to have been passed over, the doctrine laid down by Senator Verplanck, in Saltus v. Everett, and to which both Chancellor Kent, in his Commentaries (2 Kent’s Com., p. 621), and Mr. Justice Story in his Treatise upon Agency (§§ 73, 94, 229), seem to have given their sanction, is to be followed as law, it may be seriously doubted, whether the doctrine as understood and explained by these eminent jurists, is applicable to the present case, so as to cover and warrant the defence that has been so confidently relied on. The doctrine thus explained, we understand to be this: That when the owner of goods puts them into the possession of a person whose ordinary and known business it is to sell goods, of the same description, he by this voluntary act holds out such person to the world as clothed with a general authority to sell, and, consequently, if a sale is made by him to an innocent purchaser, is concluded from denying its validity. If, under the doctrine applicable, therefore, it *507 is evident that it must appear that the business of the agent was known to his principal,' the owner of the goods, when he entrusted them to such agent’s charge, and was known to him to embrace the sale of goods of the same description. Now, as I understand the evidence in the present case, the ordinary business of Davis & Peabody, when the plaintiff placed his wool in their custody, did not embrace the sale of wool. The testimony of Baker is express, that at that time they were sellers of provisions and other produce and not of wool, and if their business or that of their successor -Tuthill was afterwards so enlarged as to embrace the sale of wool, there is no evidence that this change in the business was known to the plaintiff. There is no evidence, therefore, that by any voluntary act he held out Tuthill to the world as clothed with an authority to sell.
The plaintiff’s counsel excepted upon the trial to the ruling of the Judge, in admitting evidence to show that Tuthill, previous to the sale to the defendants, had publicly become a dealer in wool, and if proof of this fact were alone sufficient to establish the defence, we think that the evidence given was properly admitted; but if we are right in the grounds upon which we now place our decision, this evidence upon a future trial will be immaterial and irrelevant, and ought, therefore, to be excluded. It will be irrelevant if the fact that the wool was left with Tuthill for storage only shall be conclusively proved.
Nonsuit set aside, and new trial granted; costs to abide event.