By the Court—Hoffman, J.
This cause was .heretofore before the General Term of the Court, in July, 1854, upon a report of a referee. Mr. Justice Campbell, who delivered the opinion of the Court, and the late Chief Justice Duer, concurred in holding that the defendants were protected under the provisions of the statute of 1830, relating to factors. Justice Duer expressed no other opinion.
Mr. Justice Bosworth, who also heard the case, stated, on the argument of this appeal, that he dissented from that conclusion, although he did not write a dissenting opinion, and that Mr. Justice Duer concluded not to report the case.
The ease, as affected by the factor’s act, appears to be this: The owner of wheat, living in Niagara county, New York, ships it to a house in Troy, by a bill of lading providing for a delivery to that house. But the transportation is to be effected, partly in *166 lake vessels to Oswego, and from thence by canal boats to Troy. A transhipment at Oswego was therefore necessary, and Mathews was employed as the agent for a commission, to superintend and effect this. The course of business required that in some instances the wheat should be deposited at Oswego, until canal boats were ready to carry it forward. The bill of lading was therefore álso indorsed, “ care H. Mathews, Oswego.” In the present case, he did get possession of the wheat, so as to deposit it in his own bin, in common with his own, or the wheat of others. He was merely a shipping and receiving agent, his duty being to pay lake freights, &c., and forward the property.
Since this case was before the General Term, the factor’s act has received an elaborate consideration and analysis by the late Chief Justice Dues, and we apprehend that the principles he then declared, and which the Court sustained, would lead him to a different conclusion from the one he assented to in the present instance. (Bonito v. Mosquera, 2 Bosw., 401; see, also, Cook v. Adams, 1 Bosw., 497.)
Mathews was not a factor or agent entrusted with the possession of either one of the documents enumerated in the act “relative to principals, and factors or agents.” (1 R. S., 774.)
On the document he possessed, it would appear that he was not the owner; the document was not delivered to the defendant, nor exhibited to him. hi or was the possession given to Mathews for the' purpose of sale, or as security for advances to be made on the property. Besides, the 6th section appears to admit of a construction decisive against this position.
We do not think that if the plaintiff was the true owner of the wheat in question, the defendant can be protected by virtue of this statute. It becomes necessary, therefore, to consider the other grounds on which Mr. Justice Campbell rested the decision, and the other points relied upon by the plaintiff.
And in the first place, we think that the identity of the wheat which belonged to the plaintiff with that which came to the control, and its proceeds to the hands of the defendant, is sufficiently established. Wetrace3,200bushelsofwheatintothebin and there remaining on the 14th of October. On the 23d, all that remained was shipped; 984 bushels definitely belonging to Wright & Outwater, and 722 belonging to the plaintiff; so *167 belonging because Mathews did not own them, and not a shadow of title appears in any one else.
Mathews was clearly responsible in an action of replevin for this wheat. So were Jones, Himrod & Titus, who sold it, in trover. If the wheat of two persons is mixed together, with their knowledge and consent, and either carries away and disposes of the whole, an action of trover may be maintained against him. (Nowlen v. Colt, 6 Hill, 461.)
The case of Mallory v. Willis, (4 Comst., 76,) shows, that where the arrangement between the parties amounts to a bailment of wheat, the plaintiff can sustain replevin for a portion of the wheat manufactured into flour.
And in Silsbury v. McCoon, (3 Comst., 379,) the law on the subject is fully examined. Corn was taken from the owner by a willful trespasser, and converted into whiskey. It was held, that the property was not changed, and the whiskey belonged to the owner of the corn, and trover was supported.
Through all the niceties of distinction which we find among the civilians, upon the subject of accession or commixion, we trace the principle almost invariably respected, that if the article retains substantially its original form and nature, the privilege of reclaiming it exists. Si mulatio perimit priorem speciem, et parit novara, is the inquiry. (Leges apud Troplong Droit Civile, tome 1, n., 111.)
M. Touillier, in treating of the “ mixture or confusion of things belonging to several owners,” states that if they can be separated, he who was ignorant of the mixture may demand a division, or he may demand the price. If they cannot be separated without inconvenience,, the ownership is in common, in the proportion of the quantity, quality and valué belonging to each. Wherever the right of reclaiming property exists, the owner may demand restitution of the article, in the same nature, weight, measure and goodness; or may have its value, at his election. (Le Droit Civile FrangaisB, tome 3, p. 64.)
Such is the law, as stated by Justice Story (on Bailments, § 40); and by Blackstone. (2 Com., note, 404, 405.) See, also, Ryder v. Hathaway, (21 Pick., 298;) and Pratt v. Bryant. (20 Vt. R., 333.)
It is therefore, I apprehend, sufficiently clear that the mixture of the wheat of the plaintiff with that of other parties in the bin *168 of Mathews, in. no way affected the property of the plaintiff in 722 bushels of wheat, and that there is no difficulty in saying that the 722 bushels consigned to the defendant included the wheat of the plaintiff; that the identity is sufficiently traced and marked.
In this view, the property of the plaintiff, without his consent, contrary to the destination he had given it, without authority given by him to any one to alter that destination, came into the hands of the defendant. It came there through an act of an agent without power in this particular, and which act, in sending this wheat to Hew York, was in legal acceptation, tortious. The defendant is also to be considered as having accepted and paid drafts on the credit of this wheat, in common with other shipments.
I apprehend, however, that the law is settled in favor of the original owner, thus wrongfully deprived of his property, even against an innocent purchaser. (Silsbury v. McCoon, 3 Comst., 379; Saltus v. Everett, 20 Wend., 267; Covell v. Hill, 4 Denio, 323, and 2 Seld., 374; Cobb v. Dows, 9 Barb., 230; and Cook v. Adams, supra.)
These authorities, with those late cases relating to bills of .lading and certificates of stock, not only declare and renew the doctrine of the common law, that the title of an owner shall not be divested without his act or consent, but narrow and restrict those exceptions which the exigencies of a mercantile community have required, or its peculiar views have suggested.
The case seems merely this. The owner of goods has employed an intermediate agent only to forward them to their destination. Hecessity or convenience places the property temporarily in that agent’s possession; he has no authority to sell or pledge; he is not entrusted with any of the documents of apparent ownership. He wrongfully appropriates the goods, and an honest purchaser obtains them from him. The original property and right of the owner are not divested. His power to reclaim the goods or their avails is not lost.
I think there was error in dismissing the complaint, and that there must be a new trial, with costs to abide the event. .
Ordered accordingly.