JOHN ROBERTS *v.* THOMAS E. DILLON AND EDWARD OPENSHAW.

The custom of markets overt does not exist in this country, and the rule is that no one can transfer a greater interest in a chattel than he himself has.

Thus where the plaintiff, a master of a ship, sent his chronometer to the defendants to be repaired, and they recognized it as one that had been hired by them to another master, to be returned at the end of a voyage, but which had never been returned,—*Held*, that though the plaintiff had purchased the chronometer of a watchmaker in good faith, he could not recover it from defendants.

APPEAL by the defendants from a judgment of the First District Court.

This action was brought to recover possession of a certain chronometer. The chronometer in question was purchased by the defendants in 1862, and in 1864 they hired it to the master of the brig Hayward, at $6 per month, to be returned at the expiration of the voyage, or within twelve months. The chronometer never was returned as agreed, but was purchased by the plaintiff in May, 1866, from a watch and chronometer maker, for £20, in Liverpool, England. On the arrival of the plaintiff's vessel in this port, an agent of the defendants came on board, and soliciting custom, the plaintiff gave him the chronometer to be repaired. The defendants refused to return the watch, and the plaintiffs brought this action. Judgment was given for the plaintiff, from which the defendants appealed to the General Term of this court.

*F. A. Wilcox*, for appellants.

*Reymert* and *Stevens*, for respondent.

BY THE COURT.—DALY, F. J.—The plaintiff, the master of a British vessel, after his arrival in this port, sent his chronometer to the defendants to have it repaired and regulated. He had bought it more than two years previously at the shop of a large watch and chronometer dealer in Liverpool, for twenty pounds, which, it would seem, was a fair price, as it was

agreed upon the trial that the value of it here, at that time, November, 1868, was $150.

The defendants refused to return it, upon the ground that it was their property. It appeared that the chronometer originally belonged to them, and that they had, four years before, let it out upon hire to the owners of a vessel bound for Liverpool, whereof one Myers was master; the owners giving the defendants a written acknowledgment of the receipt of it, by which they agreed that it should be returned to the defendants at the expiration of the voyage, or within twelve months from the date of the agreement, and that until returned they would pay the defendants at the rate of six dollars per month for the use of it.

How the chronometer came into the possession of the watch and chronometer dealer in Liverpool, does not appear. Those to whom it had been let upon hire had a special property in it, but had no right to transfer the title to another. A radical defect of title in the possessor, says Chancellor KENT, is available to the true owner as against the purchaser, and this is, he remarks, such a defect when the person from whom the property was acquired was incapable of giving his consent, or when the thing had been stolen or obtained by violence (2 Com. 325). If this were an open question, I should hold, the more especially as the defendants have a written agreement upon which the owners of the vessel are answerable for the return of the chronometer or its value, that the plaintiff's title to it ought to be upheld, upon the ground stated by Chief Justice HOLT, in *Hern* v. *Nichols* (1 Salk. 289), that it is more reasonable that he who puts trust or confidence in the one that did the wrong, should be a loser, than a stranger. But the law is too well settled to be disturbed by this court. It was declared in *Hartop* v. *Hoare* (3 Atk. 44), upon the authority of previous cases, and after an elaborate examination, that the true owner of goods does not lose his property by a sale made by the possessor of them, unless it were made in market overt; that no regard is had to the vendee's ignorance of the vendor's want of title; no regard to the vendee's coming rightfully to them as a purchaser without notice; no regard to

the vendor's having the lawful possession of them. The custom of markets overt does not apply to this country, and the general principle, says KENT, applicable to the law of personal property, is, that *nemo plus finis in alium transferre potest quam ipse habeat*, a maxim alike of the civil and the common law; that a sale *ex vi termini*, imparts nothing more than that the *bona fide* purchaser succeeds to the rights of the vendor, and that, consequently, as a general rule, the title of the true owner cannot be lost without his own free act and consent. In *Saltus* v. *Everett* (20 Wend. 282), Senator VERPLANCK, after reviewing all the authorities, limits the cases in which the possession of property carries with it the evidence of ownership and the right to transfer it, to cases of bank bills, checks and notes, payable to bearer or transferable by delivery, or where the *indicia* of ownership is given by the delivery of bills of lading with the power of transfer or the apparent right of property is conferred by a sale and delivery of it, though fraudulently obtained, or the right to sell implied as when goods are placed by the owner in the possession of one whose usual business it is to sell, and then lays down the general rule in terms, specifically embracing the present case. "If the owner loses property or is robbed of it, or it is sold or pledged without his consent by one who has only a temporary right to its use by *hiring* or otherwise, or a qualified possession of it for a specific purpose, as for transportation or for work to be performed upon it, the owner can follow and reclaim it in the hands of any person, however innocent." I confess I have never been satisfied with this rule, or rather with the extent to which it has been carried. My experience is, that it operates very unjustly in very many cases, and that it would be better if it were qualified more by the reason suggested by Chief Justice HOLT. But it has been adhered to by the highest court in this State, and the whole amount of authority is in support of it (*Wilkinson* v. *King*, 2 Camp. 335; *Hardman* v. *Wilcox*, 9 Bing. 382, note; *Wheelwright* v. *Depeyster*, 1 Johns. R. 471; *Galvin* v. *Bacon*, 11 Me. 28; *Williams* v. *Merle*, 11 Wend. 80; *Cook* v. *Adams*, 1 Bosw. 497).

The plaintiff testified that one of the defendants told him

that the defendants had sold the chronometer, but it is evident from the testimony of Bussing, and from the production of the written agreement or receipt, that the plaintiff was mistaken. The justice could not have put his decision upon this ground, but upon the ground that the plaintiff's title to the chronometer was complete by his purchase of it in good faith at the watch and chronometer maker's shop in Liverpool. The judgment must, therefore, be reversed.

Judgment reversed.