### Silas Pierce *versus* Joseph Whitney.

Counsel will not be permitted to argue to the jury, that the note before them was payable, according to the agreement of the maker, at a different place, than is indicated by the note itself.

In an action against the indorser, evidence that the maker of a note addressed a letter to the holder, informing him that he should not be able to pay it at maturity, and requesting an extension, is not admissible to excuse a presentment of the note at the maker's place of residence and business, at its maturity.

The parties to a note, deposited in a bank in Boston for collection, cannot be affected by an usage in the other banks, which has no existence in the bank where it is lodged.

This was an action brought upon a note of hand, of this tenor. " Boston, May 18, 1837. Six months from date, value

received, I promise to pay to the order of Joseph Whitney, three thousand three hundred and seventy-eight dollars and sixty cents. *Luther C. White"*, and indorsed by the defendant.

At the trial before TENNEY, J. the plaintiff showed by *Charles Hayward*, a notary public, that at the maturity of said note he demanded payment of the same of the maker, at the Commonwealth Bank in Boston, where the same was lodged for collection, and notice of the dishonor of the same on that day was given to the indorser, through the postoffice, directed to him at Calais, Me. It was admitted that the notice to indorser was conformable to law.

The plaintiff also proved by the messenger of the Commonwealth Bank in the fall of 1837, that he had charge of the collection paper left at said bank for collection, and that said note was left in said bank for collection, and that, from a week to ten days before the note fell due, notice was given to White, the maker, through the postoffice, directed to Calais, Me., where White at that time lived, informing him where the note was, and that it was left in said bank for collection. Also that when the note fell due, demand was made upon White, through the postoffice, directed to Calais, Me.

The plaintiff showed by one *Bela Keating* a general usage of the banks in Boston as to demand and notice, and among other things, that it was the custom of the Boston banks, when a note is dated at Boston, and the maker and indorser live out of the State, and it is payable at no definite place, to notify the maker that the note is at the bank, where it may be, for collection, a reasonable time before it becomes due; that if it is unpaid at maturity or the last day of grace, it is delivered to a notary, to be protested, who notifies all the parties of the non-payment of the note on the same day; that he never knew of any other usage of the banks in Boston, in relation to such paper; that the notices are sent by mail, and the notary, on the day the note becomes due, presents it at the bank, to some officer of the bank, and demands payment; and this is done at the bank at which the maker has been notified that the note is left. It also appeared by this witness, that he had been

a collecting clerk in a Boston bank for twelve years heretofore, and a merchant since, and had had the notes of Whitney, which had been lodged at the banks for collection.

It also appeared by the deposition of *Mark Healy*, that he had long been a director of a Boston bank, and president of the Merchants' bank, and was acquainted with the usages of the Boston banks, and he with another witness generally confirmed the other testimony as to the usage.

The plaintiff also proved by the deposition of *H. N. Crane*, that he deposited the note in suit, in the said bank for collection, and particularly requested the messenger to notify the maker where the note was, and that the maker wrote back that he should not be able to pay the note at maturity, and wished an extension.

To show the knowlege of defendant of said usage, the plaintiff introduced three notes of hand, for large amounts, and one draft and acceptance, which were lodged in the North bank, Boston, for collection, and which afterward became the property of said bank, and which were put in suit in this county, and the defendant defaulted. On one of said notes, said *Whitney* was indorser, and also upon the draft. The plaintiff also showed that the defendant had long been engaged in business as a merchant in Calais, and had drawn many drafts on persons in Boston, and had had notes frequently at the different banks in Boston, and was frequently there.

It also appeared that the maker of the note had been a director in the Calais bank five years, and had indorsed notes and drafts, payable at Boston, for defendant and others. Upon this evidence, the plaintiff's counsel contended : —

1. That as the note was dated at Boston, and White, the maker, was informed where the note was left and to be found, before its maturity, and had notified the holder, that he could not pay it at maturity, and wished an extension of the same, the same having been given for goods purchased by the maker in Boston; that there was evidence from which the jury might presume, that by the understanding and agreement of the parties, at least on the part of White, that the note was to be

paid in Boston.. But the presiding Judge, would not allow the counsel for plaintiff to urge such evidence upon the jury.

2. The plaintiff's counsel contended, that, as the evidence proved that the maker of said note could not pay it at maturity, and had so informed the holder, it became unnecessary to make a demand upon the maker at Calais, in order to charge the indorser; that the note was dishonored if not paid at maturity, and the maker had no right to refuse payment at the bank when he had been informed where the note was, and when he had made no objections to such place of payment, and that it was sufficient under such circumstances, if the note was left in a bank in Boston, and notice given on the last day of grace to the indorser, of the demand at the bank, and that the note was not paid, and that the holder looked to him for payment, and this irrespective of any usage of the banks of Boston, variant from the law merchant to bind the indorser, but the Judge ruled otherwise.

3. The plaintiff's counsel contended, that if from the facts and circumstances of the case, it appeared that the maker of the note had such demand made upon him as to cause a dishonor of said note, according to the usage of the Boston banks, and notice was given to the indorser in due season, that although *White & Whitney* were unacquainted with the usage, yet the indorser would be liable, but the Judge ruled otherwise.

The plaintiff's counsel further contended and requested the Judge to instruct the jury, that if they found such a general usage of the banks in Boston, as had been testified to, and *White & Whitney* were acquainted with that usage, or either of them, and that demand and notice has been made and given in conformity therewith, the indorser would be liable in this action, but the Judge refused to give such instruction.

In summing up, the presiding Judge charged the jury, that if it was proved to them that there was a custom of the Commonwealth Bank existing before and on Nov. 21, 1837, (the time this note was at maturity) when a note was left there for collection, the parties to which lived out of the city, to notify and

make demand as had been done here, and *White & Whitney* were acquainted with such custom, or either of them, the indorser would be liable ; but that a general custom of the banks of Boston, if found to exist at or before said time, and that *White & Whitney*, or either of them, were acquainted with such usage, would not be sufficient to hold the indorser.

The jury returned a verdict for the defendant, and also to a question submitted to them by the Court, whether there was any such usage as testified to in the Commonwealth Bank, answered that it did not exist.

And exceptions were taken to the rulings in the trial.

*Bridges,* for plaintiff.

There are cases, where no demand need be made upon the maker of a note to bind the indorser ; as where he has fully secured himself from loss, or where the note is payable at a bank ; and the maker of a note may agree to waive a demand upon him, or that the demand may be made at a particular place other than his place of business or residence ; or from usage at the bank, where the note is discounted or left for collection, he being shown to be acquainted with that usage, he will be considered as waiving a condition implied by law in his favor, if a demand is made upon him in accordance with such usage, and in these cases an indorser will be held liable to pay, if he has notice in due time. And if the maker of a note make a payment on the day the note falls due, this would be evidence of presentment on the day it was due. 20 Maine, 98.

From this it appears that it is immaterial to the indorser in what form the demand was made upon the maker, if seasonable notice of the non-payment of the note was given to him. 17 Mass. 449.

Do not the facts in this case show a waiver on the part of White as to a demand on him at Calais ? And why might not a jury infer from them, the understanding of White, that the note was to be paid in Boston ? Why was the counsel refused this ? Suppose White, at the time the note was given, had agreed with the holders that they need not send the note to Calais to make demand upon him when due, but that he would

Pierce v. Whitney.

pay it at the Commonwealth Bank, if left there. It is not easy to see why this would not have been binding in law, and also a waiver of a demand at Calais, and such a demand as the maker would be bound by. Then why might not the plaintiff have urged such evidences of waiver upon the jury? Surely if White had no right to refuse payment in Boston and at the bank, then the demand and notice were sufficient, else the law as laid down in the case last cited is not sound. But the principles of that case are cited and commended in 18 Maine, 99.

But I pass to the second and most material point of this case. There was evidence before the jury of a general usage of the banks in Boston to demand and give notice as was done in this case, and also tending to show that White and Whitney were acquainted with it before and at the time the note fell due. The instructions requested on this branch of the case ought not to have been withheld. Bills of exchange and notes of hand are creatures of usage, and the laws regulating the rights of the parties have grown up and been adopted from usage.

Here were White and Whitney, both merchants, and doing large mercantile business, and much of it in Boston, and having many notes and bills and drafts at the banks there, and left for collection. Why should they not know the general usage of the banks upon such a case, and be bound by it, as well as a person living in Boston? It is well settled, that a demand upon one resident in a city, without the note, and on the first day of grace, will be sufficient to hold the indorser, accustomed to do business at the bank. 18 Maine, 99. It was not shown that White or Whitney were accustomed to do business at the Commonwealth bank; but we showed the invariable usage of all the banks in Boston respecting notes like the one in question, and evidence was adduced tending strongly to show the knowledge of both parties to the note. The mode adopted here to charge the indorser was the mode adopted by all the banks in Boston, and no exceptions were known. One would have supposed, when the usage was shown of the kind named, and that

the parties were acquainted with it, and the objection coming up, that it was not shown that such was the usage of the Commonwealth bank before and at the time, &c. and the parties acquainted with it ; that the presiding Judge would have given quite a different direction to the cause, than was given and that he would have charged the jury, that " if they believed such was the general usage of Boston banks, from the evidence, they might judge whether or not such was not the usage at the Commonwealth bank, before and at the time the note became due, as the usage embraced all the banks in Boston."

We showed a general usage of a particular place, regulating the trade and business in this particular, and binding upon all acquainted with it. The finding of the jury as to the Commonwealth bank, was in consequence of the erroneous instruction of the Judge.

*Downes* and *Cooper*, for defendants.

SHEPLEY, J. — The promissory note, on which this action was commenced, appears to have been made in the ordinary course of business. It does not appear to have been made or indorsed with any knowledge or expectation, that it would be discounted or deposited in a bank for collection. Whatever knowledge persons may have of the usages of banks, they can scarcely be expected to make all their negotiable paper with reference to such usages, especially when their residence is established at a great distance from them. In the case of *Maine Bank* v. *Smith,* 18 Maine, 99, the notes were made to be discounted at the bank as renewals, as they are called, of former notes discounted.

It is unnecessary to consider, what might have been the effect of such an usage of banks, as was attempted to be proved in this case, upon the rights of parties to negotiable paper not made or indorsed with any knowledge or expectation, that it was to be discounted or deposited in a bank, if the proof had shown, that they were acquainted with the usage ; for the jury have found, that no such usage, as would vary the legal rights of these parties, was proved to have existed at that time in the bank, in which this note was deposited.

The first cause of complaint presented by the bill of exceptions is, that the counsel for the plaintiff was not permitted to make an argument to the jury, to show " that the note by the understanding and agreement of the parties, or at least on the part of White, was to be paid in Boston." In doing so the presiding Judge acted correctly. It had already been decided, that the note was not made payable in the city of Boston, because it appeared to have been made and dated there. 22 Maine, 113. Parol evidence cannot be received or have the effect to show, that a note not made payable at any particular place was in fact agreed to be payable at a particular place. A written memorandum of such a place, at the foot or on the margin of the note, has been adjudged to be insufficient. The place of payment must be stated in the body of the note to make it payable at that place. Story on Notes, § 49, and notes 1 and 2.

The second cause of complaint is in substance, that the Court refused to admit proof of a letter addressed by the maker to the holder of the note, before it became payable, informing him, that he should not be able to pay it at maturity and desiring an extension of the time of payment, to have the effect to excuse the holder from making a presentment of the note at the maker's place of residence and business. The maker and holder, had they agreed to do so, could not change the contract by a parol agreement, so as to affect the rights and liability of an indorser or to excuse themselves from performing the condition required by the law of the contract, unless the indorser had consented to it. Story on Notes, § 291.

The remaining cause of complaint appears to be, that full effect was not allowed to the proof of usage generally of the banks in Boston upon the rights of these parties, although that usage was not found to have any existence in the bank in which this note was deposited. To have any effect upon the contract, if it be not so made with reference to the usage, that it becomes a part of it, the usage must be applied to it. As well might it be contended, that a presentment made by an

individual not in conformity to law, would be good, because there was in that place a usage of banks, by which it might have been good, if made by them, as that it would be by a corporation having no usage of its own differing from the law, because other corporations had such a usage.   *Camden* v. *Doremus*, 3 Howard, 515.

*Exceptions overruled.*