## Case No. 6,322.

### Ex parte HEIDELBACK.

### In re GLYN.

[2 Lowell, 526;[1] 15 N. B. R. 495; 23 Int. Rev. Rec. 73; 9 Chi. Leg. News, 183; 1 Cin. Law Bul. 21.]

District Court, D. Massachusetts. Dec., 1876.

#### DAMAGES ON BILLS OF EXCHANGE.

1. The rate of interest and damages which the drawee of a bill is to pay ex mora is governed by the law of the place where the bill is drawn.

2. If a bill is made and dated at the business domicile of the drawee, his undertaking is to pay it there, in case of dishonor, though it may have been negotiated elsewhere.

3. Damages in a case of this sort are a part of the law of the performance, and not of the execution and validity of the contract, nor of the remedy.

4. Such a question, arising in the courts of the United States, is one of general jurisprudence, and not of local law.

The amount of debt which the holders of certain bills of exchange should prove against the estate of the bankrupt was submitted to the court upon agreed facts. Heidelback, Frank, & Co., of New York, hold two similar bills, of one of which the following is a copy:

"£2,500. Boston, May 6, 1875. Sixty days after sight of this first of exchange (second and third unpaid), pay to the order of myself twenty-five hundred pounds sterling, value received, and charge the same to account. Charles H. Glyn. To Messrs. Robert Benson & Co., London." Indorsed: "Pay to Heidelback, Frank, & Co., or order. Value received. New York, May 7, 1875. Charles H. Glyn." "Accepted May 18, 1875, at Messrs. Glyn, Mills, & Co. Robert Benson & Co."

The other holders have bills like this, excepting that the indorsement of Glyn is thus: "Pay A. B. or order. Charles H. Glyn." The question presented is, whether the interest and damages are to be assessed according to the law of New York or that of Massachusetts. At the time the bills were drawn, Glyn had an office and did business in Boston, and these bills were written and indorsed in blank by Glyn in Boston, and were by him sent to his agent in New York, who negotiated them to Heidelback, Frank, & Co., and received the amount of the same, and remitted the same to Glyn. Heidelback, Frank, & Co. forwarded the bills to London for acceptance, where they were accepted, and subsequently duly protested for non-payment, and returned to Heidelback, Frank, & Co. The words, "Pay to Heidelback, Frank, & Co., or order. Value received. New York, May 7, 1875,"—were written in New York over Glyn's indorsement at the time of the negotiation of the bills. The bills held

by the other petitioners were drawn, indorsed, and negotiated in like manner. The Revised Statutes of New York (part 2, c. 4, p. 18) provide as follows: "The rate of damages to be allowed and paid upon the usual protest for non-payment of bills of exchange drawn or negotiated within this state shall, in the following cases, be as follows:" "(4.) If such bill shall be drawn upon any person or persons, at any port or place in Europe, ten dollars upon the hundred, upon the principal sum specified in the bill." The General Statutes of Massachusetts provide as follows: "When a bill of exchange, drawn or indorsed within this state and payable without the limits of the United States, is duly protested for non-acceptance or non-payment, the party liable for the contents of such bill shall, on due notice and demand thereof, pay the same at the current rate of exchange at the time of the demand, and damages at the rate of five per cent upon the contents thereof, together with interest on the contents, to be computed from the day of the protest. And said amount of contents, damages, and interest shall be in full of all damages, charges, and expenses. Gen. St. c. 53, § 11.

A. S. Wheeler and C. Demond, for the holders of the bills.

(1) A bill or note takes effect as a contract, not at the place where it is written, drawn, or indorsed, but where it is delivered. Cook v. Moffat, 5 How. [46 U. S.] 295; Brownell v. Freese, 35 N. J. Law, 285.

(2) The damages to be paid by the drawee depend upon the law of the place of drawing, that is (if we apply the law above mentioned in our first point), the place of delivery and negotiation. Allen v. Kemble, 6 Moore, P. C. 314; Gibbs v. Fremont, 9 Exch. 25; City Savings Bank v. Bidwell, 29 Barb. 325; Pine v. Smith, 11 Gray, 38; Tilden v. Blair, 21 Wall. [88 U. S.] 241; Young v. Harris, 14 B. Mon. 556; Depau v. Humphreys, 10 Mart. (La.) 1; First Nat. Bank v. Morris, 1 Hun, 680; Bank of Georgia v. Lewin, 45 Barb. 340; Sylvester v. Swan, 5 Allen, 134; Whitten v. Hayden, 7 Allen, 407; Whart. Confl. Laws, § 503.

Mr. Lothrop, R. R. Bishop, and W. S. Hall, for the general creditors.

(1) The contract of Glyn was, that if the acceptors did not pay the bills at maturity, he would, on due notice, pay the holder the sum which the acceptors ought to have paid, together with damages, which, in the absence of statute regulation, would be the expense which the holder would incur to indemnify himself at the place of payment with interest. Suse v. Pompe, 8 C. B. (N. S.) 557, 562.

(2) The statutes which New York and Massachusetts have made on this subject have no extra-territorial operation, and affect the remedy only. Ayer v. Tilden, 15 Gray, 178;

[1] [Reported by Hon. John Lowell, LL. D., District Judge, and here reprinted by permission.]

Ives v. Farmers' Bank, 2 Allen, 236; Gale v. Eastman, 7 Metc. (Mass.) 14.

(3) The courts of the United States sitting in Massachusetts will follow the law of that state in the matter of damages. Rev. St. § 721; Brown v. Van Braam, 3 Dall. [3 U. S.] 344; Haussknecht v. Claypool, 1 Black [66 U. S.] 431.

(4) If not a matter of remedy, still Boston was the place of the contract of Glyn. Snaith v. Mingay, 1 Maule & S. 87; Barker v. Sterne, 9 Exch. 684; Lennig v. Ralston, 23 Pa. St. 137.

LOWELL, District Judge. The principles of law upon which this case must be decided have been thus laid down by the supreme court in Scudder v. Union Nat. Bank, 91 U. S. 406. Matters pertaining to the execution, validity, and interpretation of a contract are determined by the law of the place where it is made; those connected with its performance, by the law of the place of performance; those respecting the remedy, by the lex fori. The distinction between the law applicable to the validity and that governing the performance was first clearly announced in this country, I believe, in the very able opinion of the court in Depau v. Humphreys, 10 Mart. (La.) 1. A bill of exchange given in Louisiana for money advanced in that state, with a reservation of interest lawful there but usurious in New York, was held to be valid, though the payment was to be in New York. This decision is criticised by Judge Story, who inclines to refer all contracts, even as to their validity, to the place of performance. Confl. Laws, § 304. Judge Curtis, in arguing the important case of Carnegie v. Morrison, 2 Metc. (Mass.) 381, assailed the same case, and maintained the doctrine of Story; but the court decided that the contract, which was a letter of credit issued in Boston, authorizing bills of exchange to be drawn at Gottenburg in Sweden on London, was to be governed, as to its validity and effect between the original parties, by the law of Massachusetts, though the bills drawn under it must conform to the law of Sweden, and the acceptance of the bills to the law of England; which is precisely the doctrine of Depau v. Humphreys and Scudder v. Union Nat. Bank, above cited.

Mr. Wharton, in his valuable work on the Conflict of Laws (section 401), proposes, as a rule which best harmonizes the authorities, one substantially like that of the decisions above referred to, though carrying the division one step farther: "Obligations, in respect to the mode of their solemnization, are subject to the rule locus regit actum; in respect to their interpretation, to the lex loci contractus; in respect to the mode of performance, to the law of the place of performance. But the lex fori determines when and how such laws, when foreign, are to be adopted, and in all cases not specified above supplies the applicatory law."

In the case of a bill of exchange, the contracts of the various parties are distinct, and the drawer is bound, generally speaking, according to the law of the place where the bill is drawn, which is in most cases the same as that in which it is to be paid by him, if he pays it. Still he is to a certain extent involved in the same law with the acceptor, because upon due protest, demand, and notice he is bound to make good to the holder what the acceptor ought to have paid at the place where he was to pay, which makes it necessary to ascertain what that amount was by the law of that place, and whether by the same law due demand was made of the acceptor and due protest upon the dishonor. What the drawer should pay as interest, ex mora, or as damages, does not depend upon the law of the place where the acceptor was to pay the bill, if that is different from the place where the drawer's contract is to be performed.

So far the parties to this petition are agreed, and I have therefore cited no authorities for some of my positions; but here they divide. The general creditors contend that the law of Massachusetts governs this matter of damages in the present instance, because the remedy is sought here; and, if that be not so, because Boston is the place of performance. The petitioners maintain that the law of New York is to be followed, because the bill was negotiated there, and the first holder lived there.

I am of opinion that the Massachusetts law governs, not because the damages are part of the remedy, which they are not, but because Boston was the place in which the drawer undertook to perform his contract. In Massachusetts, it is held that the rate of interest to be recovered, ex mora, for default in paying a promissory note, is a mere matter of remedy. The decisions which establish this point, if applicable to bills of exchange, are not binding on this court, because the law of bills of exchange is part of general commercial jurisprudence, and not of local law or usage,—Swift v. Tyson, 16 Pet. [41 U. S.] 1; Watson v. Tarpley, 18 How. [59 U. S.] 517,—and so is any question of the conflict of laws. When we have ascertained what local law applies to the case, we follow it; but the ascertainment itself is not a local question.

In most cases, the place where a note is made or a bill is drawn, indorsed, or accepted, is, in fact, the place where the parties respectively undertake to pay it; and therefore questions rarely come up of any distinction between the law of the contract and that of the performance; and the courts, in pronouncing on such cases, have had no such distinction in mind, and any general statements as to the contract being governed by the law of the place where it is made or is to be performed must be taken with that allowance. When they say that a bill is to be paid by the acceptor at the place where he accepts,

and by the drawer where he draws, they are stating the general presumption of fact, that a bill or note is probably dated at the place where the party intends to pay it. The petitioners do not deny that it is the place of performance whose law must govern the decision of this controversy, if that is a different place from the place of entering into the contract; but they insist that unless the contract provides expressly for a different place, that of making the contract is conclusively and always the place of performance, and that a contract is made where it is delivered.

My opinion is, that where no place of performance is mentioned in a note or bill, it is to be paid by each person liable upon it, at the place of his own "domicile," using that word in a sense large enough to include an established place of business as well as one of residence. Mr. Justice Story (Confl. Laws, § 293c, note 3) says, that if a note is made in one state and negotiated to an indorsee in another, the contract of the maker with the indorsee takes effect as a promise in the state where the note was made, and not where it was indorsed. It will be recollected that Judge Story refers all contracts to the place of performance, and therefore his meaning here is, that the maker of a note is to pay it at his own home. So Westlake (section 235) affirms that the acceptor promises to pay the bill, if no place of payment is named, at the known place of business from which he dates his acceptance. And Wharton (section 451) says, that if an indorser indorses a note when casually absent from his domicile, it is the law of such domicile that binds, that being construed to be the place, so far as he is concerned, of payment. The eminent jurist, Savigny, as quoted by Mr. Wharton (section 426), gives several rules of law on this subject, of which two are pertinent to this case. One is, that the seat of a continuous business supplies its local law to all obligations emanating from him who conducts the business; and the other, that the debtor's domicile supplies the law to his obligations emanating from the domicile.

These remarks agree with the general opinion of business men, as I suppose. I take it that if a banker issues bills or notes to circulate as money, there is no doubt that his undertaking is to pay them over his counter. I take it that this bill would be called a Boston bill on London, and that all merchants would understand that the drawer's undertaking is to pay in Boston if the drawee shall not do so in London, and he is duly notified thereof in Boston. Boston bills on London are bought in large quantities by merchants in New York, sometimes in Boston by agents of the buyers, and sometimes in New York from agents of the sellers, and sometimes, I dare say, on the cars between the two places. Now, it seems to me inadmissible to say that the same apparent contract between the same parties may have three different modes of performance, according as it is delivered in one place or another. It is true that all contracts take effect from delivery; but the question in every case is, what does the contract mean after it has been delivered. And I am of opinion that a banker's draft, dated at his usual and only place of business, is payable there on the default of the drawee, by the implied terms of the contract itself, and by the usage of merchants, and by law.

Let us look now at some of the decisions. It is well settled, that, in order to hold the indorser of a note not by its terms payable at any place, demand must be made upon the maker at his domicile; that the date of the note is presumptive evidence of the domicile, and in Massachusetts, at least, the date proves the domicile for the purposes of demand and notice, unless the holder knows of some other. But if the holder knows the real domicile, payment must be demanded there. If the promisor has changed his domicile after the note is made, the holder is not obliged to follow him beyond the jurisdiction; but if his new domicile is within the same jurisdiction, he must demand payment there. Fisher v. Evans, 5 Bin. 541; Stewart v. Eden, 2 Caines, 127, per Livingston, J., explained in Anderson v. Drake, 14 Johns. 114; Woodworth v. Bank of America, 19 Johns. 391; McGruder v. Bank of Washington, 9 Wheat. [22 U. S.] 598; Reid v. Morrison, 2 Watts & S. 401; Taylor v. Snyder, 3 Denio, 145; Smith v. Philbrick, 10 Gray, 252; Bank of Orleans v. Whittemore, 12 Gray, 469; Pierce v. Whitney, 22 Me. 113; 29 Me. 188.

The meaning of these rules is, that the contract of the maker of a note is to pay it at his domicile, no matter where he makes or negotiates it; that the domicile being usually the same as the date, he may be held to the latter as his domicile, if he has not notified the taker or holder of his note to the contrary; that the domicile, so far as jurisdiction is concerned, is that which he had when the debt was contracted, and his contract is not to vary with every removal which he may make. Many of the cases turn on due diligence; but diligence in what? In demanding payment of the note at the place where the maker of it is bound and is presumed to be ready to pay it, that is to say, the place of performance. The decisive proof of this is, that if a place is agreed on for the performance, no demand need be made elsewhere; so that actual diligence and actual demand are not the important things, but a compliance with the law which requires demand to be made at the place of performance.

Coming now to decisions of particular cases more or less like that at bar, the first which I shall cite is a leading Scotch decision, which is given at large by two learned writers on the Conflict of Laws.— Sir R. Phillimore (volume 4, p. 612, 1st Ed.)

and Mr. Wharton (section 452). In that case, a Scotchman residing in Edinburgh made a note payable to a banker, named and described as manager of the British & Australian Bank, 55 Moorgate street, London. This was held to be a Scotch debt; nothing was proved about the place of delivery or of negotiation, from which we may infer that they were not considered important.

In Hicks v. Brown, 12 Johns. 142, A. drew at New Orleans a bill on B. in Pennsylvania, in favor of C. in Tennessee, and it was held that the law of the drawer's contract was that of Louisiana. That is precisely this case; the bill taking effect when it reached the hands of the person who had given consideration for it in a state other than that in which it was drawn.

In Pine v. Smith, 11 Gray, 38, a citizen of Massachusetts negotiated in New York for a loan from a citizen of that state at eight per cent interest, which would make the contract void for usury in New York, and this was secured by note with a mortgage of land in Massachusetts. Held, a Massachusetts contract; not, however, by reason of the mortgage, which is not once mentioned in the opinion of the court.

The case of Grimshaw v. Bender, 6 Mass. 157, goes much beyond the present. There, a bill was drawn in England upon a firm whose domicile was in Boston; but the bill was payable in London, and was accepted in England by a member of the Boston house who happened to be there. The bill not having been paid, was sued against the acceptors in Boston, and the court held that the measure of damages was regulated by the law of Massachusetts, because that was the domicile of the acceptors. That case is not considered sound by Judge Story (Confl. Laws, § 419). Mr. Wharton cites both the case and the criticism, without giving his own opinion (Confl. Laws, § 451, note a). The bill was expressly made payable in London, and of course the acceptors should pay in Boston what would have produced the amount of the bill in London, which, in the absence of statute or local usage, is exactly what a drawer in Boston would be obliged to pay, and therefore the substance of the decision is sound; but in making the acceptors technically drawers in Boston, and liable to damages as such, the court overlooked the circumstance that they were not the drawers, but stood as London acceptors casually sued in Boston. After this allowance is made, the case remains a high authority for holding the domicile to be the place of performance, when none other is appointed by the contract itself.

It has been twice held in England that a bill drawn abroad and filled up and negotiated in England, is valid, if sufficiently stamped according to the law of the place of apparent drawing, though not sufficiently by the law of England. Snaith v. Mingay, 1 Maule & S. 87; Barker v. Sterne, 9 Exch. 684. These decisions have been supposed to depend upon an estoppel worked by the negotiation of the bills to innocent holders; but this explanation is not sound; they are put by the judgments upon the plain and simple reason that the contract of the drawer was made abroad; and not only so, but estoppel does not avail against the stamp laws of England. Steadman v. Duhamel, 1 C. B. 888.

In Pennsylvania, too, it was decided that the drawer of a bill, signed by him in blank as to amount, &c., in that state, though filled up and passed in England, must pay damages according to the law of Pennsylvania at the date of the drawing, and this, though the rate of damages had been diminished by a statute passed before the bill was actually negotiated. Lennig v. Ralston, 23 Pa. St. (11 Harris) 137. In Campbell v. Nichols, 33 N. J. Law, 81, the precise distinction is taken that the validity of an acceptor's contract depends upon the law of the place where the bill is negotiated and first becomes a contract, but that in all matters concerning the interest to be paid by him upon that of the place where he undertook to pay. In a later case, cited by the petitioners here, the same court, citing Campbell v. Nichols, say, though they do not decide, that a drawer's contract may differ from an acceptor's in this respect (Brownell v. Freese, 35 N. J. Law, 285); but there is neither reason nor authority for any distinction: each is liable to make good his promise when and where he undertook to make it good, as I have already shown; and if that means at the acceptor's domicile for his part, it means at the drawer's for his.

In Vanzant v. Arnold, 31 Ga. 210, the maker and the indorser of a note both lived in Georgia, but they made and indorsed it in Tennessee, where it took effect as a contract by being delivered to an agent of a creditor of the maker who lived in New York. It was held to be a contract governed by the law of Georgia as against the indorser, because he was domiciled there.

Many cases are cited by the petitioners to prove that the lex loci contractus is where the bill or note is actually negotiated. I have assumed that to be the general rule; though, if it were needful, I could point out many exceptions to it. It is not necessary, because every case but one which touches that point turns upon the validity of the contract, and not upon the mode of performance, nor upon the damages for a breach. Thus in Tilden v. Blair, 21 Wall. [88 U. S.] 241, a bill for $5,000 was drawn in Illinois and accepted in New York, and then sent back to Illinois, where it was indorsed and negotiated at a rate of interest which would be usurious in New York, and avoid the contract. The acceptor was sued in the circuit court of the United States sitting in New York; and the court held that the validity of the acceptance depended on the place of negotiation, and gave judgment for the plaintiff for an amount which it considered the law of Illinois made the contract

available for, in its inception:. The supreme court said that the bill was good for its face, and that the only error was in not giving judgment for the whole $5,000 and interest. They could not correct the error nor say whether the interest should be reckoned at the legal rate in Illinois or in New York, because the plaintiff had acquiesced in the ruling below. The only point in this case, therefore, is not reached by that decision.

All the other cases cited are open to a similar remark, excepting Cook v. Moffat, 5 How. [46 U. S.] 295, which is said to be decisive of this question in favor of the petitioners. I do not so understand it. That case was, that A., in New York, sold goods there to B., of Baltimore, who gave his note for the price, and afterwards took the benefit of the insolvent law of Maryland. The court held that the discharge in Maryland did not release the debt due to A. Mr. Justice Grier, in delivering the opinion of the court, says, that the notes, being delivered in New York in payment of goods purchased there were, of course, payable there, and governed by the laws of that place; citing Boyle v. Zacharie, 6 Pet. [31 U. S.] 635; Story, Confl. Laws, § 287. The case cited decides that advances made by a factor are to be reimbursed to him at the place where he makes them; and Judge Story, at the place cited, repeats the same doctrine. I cannot suppose that Mr. Justice Grier intended to overrule all the cases and opinions which I have cited above. There is undoubtedly much authority for the proposition, that the whole contract of sale of goods, including the payment, is governed by the law of the place of sale; this is to say. the buyer is to seek out and pay the seller if the goods are sold on credit, and if for cash, he must pay him on the spot. By the law both of New York and of Maryland,the note given for the price of goods is merely security for the payment; and on surrender of the note an action for the price of the goods may be maintained. If, therefore, an action for goods sold would not be barred by a discharge in Maryland, because its performance was to be in New York, the security ought not to be destroyed thereby. This is what I understand Mr. Justice Grier to mean in the brief remarks above quoted, though he speaks in the popular way of the note being given in payment for the goods. There are, likewise, I believe, decisions that an ordinary loan is to be reimbursed where it is made, at least if no note or bill is given for it, though the cases are, perhaps, not reconcilable on this point.

This transaction was not a sale of goods nor a loan of money, but the transfer of a credit. The undertaking of Glyn was, that if Benson & Co. should not accept or should not pay in London, and due demand and protest were made there, he would pay in Boston, on due notice and demand here.

[If New York were the place of payment, a constructive demand on Glyn there would be enough to charge him as drawer or indorser; but I have seen no cases to that effect, excepting that there are a few which hold that the date is conclusive and controls everything; and if these should be followed, the demand and notice to Glyn as indorser might be made in New York, in respect to the two drafts in which, by his authority, the indorsements were dated there; but the better opinion is, as shown by the authorities which I have cited, that if the date and domicile differ, to the knowledge of the party taking the paper, he must go to the domicile to demand payment, and so of the holder at the date of the dishonor. Glyn was not bound to tender payment in New York. If New York were the place of performance, a second or other later holder would have no information from the bill itself, what the contract of the drawer was in respect to performance, or when, where, and how he should demand it of him, excepting in respect to the two bills above mentioned, which are on their face indorsed in New York, which in this particular case might notify him, but would not have that effect, if the bills had in fact been delivered elsewhere. There is sound reason as well as strongly preponderating authority for the rule, that where the domicile and date coincide, it fixes the place of performance, if none other is mentioned in the bill. This course of reasoning shows that Glyn's indorsing two of the bills in New York, if he is to be held to have done so, is immaterial, the place of performance being indicated by the face of the bill.] [2]

The interest and damages to be proved against Glyn's estate are to be assessed by the law of Massachusetts.